658 So.2d 297 (1995)
STATE of Louisiana
v.
Ramiro CASTANEDA.
No. 94 KA 1118.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*299 Darwin Miller, Asst. Dist. Atty., Baton Rouge, for State of Louisiana.
Berkley R. Durbin, Baton Rouge, for Ramiro Castaneda.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
Ramiro Castaneda and a codefendant (Ralph Reyes) were charged by bill of information *300 with possession of marijuana of a weight in excess of sixty pounds but less than two thousand pounds. La.R.S. 40:966(E)(1). Castaneda entered a "best interest" plea of guilty (see North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)); and the court sentenced him to serve a term of five years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, and with credit for time served, and to pay a fine of $25,000. See La.R.S. 40:966(E)(1) (prior to its amendment by 1994 La.Acts, 3rd Ex.Sess., No. 77, § 1). He has appealed, urging seven assignments of error. Assignments numbers 3, 5, and 7 were not briefed on appeal and, therefore, are considered abandoned. See Uniform RulesCourts of Appeal, rule 2-12.4.

FACTS
At the hearing held on defendant's motion to suppress, Officer Wally Cowart of the Baton Rouge Police Department testified that, on the night of September 22, 1993, he and Officer Ricky Arnett observed a pickup truck traveling eastbound on Interstate-12 in Baton Rouge. The truck was pulling an empty car trailer and several times the trailer "fishtailed," causing the truck to shift over the line into another lane of travel. Whenever the truck drove slower, the trailer stopped swerving. Considering the vehicle to be a safety hazard, the officers stopped it.
Arnett asked the driver, Ramiro Castaneda, to step to the back of the truck and show his driver's license. Cowart remained in the police unit and monitored the conversation using video and audio equipment. After Castaneda searched for his license, he told Arnett that he did not have his license but that the passenger had a license. Arnett then explained the reason for the stop, and Castaneda said the trailer may not have been connected properly. When Arnett asked Castaneda where they were going, Castaneda mentioned his daughter-in-law and said he was going to Florida to pick up a vehicle. Cowart testified that Castaneda spoke English and had no problems communicating with Arnett.
After talking to Castaneda, Arnett went to talk to the passenger, Ralph Reyes. Reyes told Arnett that the truck belonged to his uncle, but that he did not have any paperwork for the vehicle. When Arnett asked Reyes where they were going, Reyes said they were going to Mississippi to pick up a vehicle for someone who had broken down. Cowart testified that Reyes said he was going to help a "friend"; however, a videotape of the conversation reveals that Reyes told Arnett it was his "uncle" who had car problems.
Because Castaneda did not have a driver's license and would have to be booked if the officers issued him a citation, Arnett decided not to issue a citation. He told Castaneda that he was not going to get a ticket but that Reyes would have to drive. Arnett then returned Reyes' driver's license and asked him if they had anything illegal in the truck. When Reyes said they did not, Arnett asked Reyes for consent to search the truck. Reyes agreed, and Arnett assured him that he did not have to allow the search. After Reyes consented to the search, Cowart got out of the unit and walked his drug detection dog toward the truck. Before getting to the truck, the dog alerted on the exterior left front corner of the trailer. After the dog alerted on the trailer, Cowart called for another officer to bring his dog to the scene. Shortly, Corporal Lyle Johnson arrived and his drug detection dog also alerted at the same place. The officers examined the trailer and determined the only place where anything could be stored was in the car ramps going up on the top of the trailer. When they drilled a hole into this space, marijuana gleanings fell out.
The officers then arrested Castaneda and Reyes and advised them of their rights. While Cowart transported Reyes to the station, Reyes said there was marijuana in the trailer but he did not know how much. Reyes also told Cowart about two hidden doors which allowed access to hidden compartments in the trailer. At the station, Reyes showed the officers where the panels were located. The officers found 27 packages of suspected marijuana, weighing 107 pounds. Castaneda denied knowing about the marijuana and otherwise did not make any statements. Tests conducted later at a *301 crime laboratory confirmed that the packages contained marijuana.[1]

FAILURE TO ADVISE OF RIGHT TO CONFLICT-FREE REPRESENTATION
In the first assignment, Castaneda urges the court erred when it accepted his waiver of the right to conflict-free representation by counsel. He specifically argues the court's inquiry was inadequate because it did not advise him of his right to conflict-free representation. He also maintains the court took inadequate measures to determine if he had the requisite capacity to understand the proceedings, considering he did not speak English and had mental problems.
From the time of their arraignment until sentencing, Castaneda and Reyes were represented by the same privately retained attorney. At one of the earlier court appearances (which was the arraignment for Castaneda and a bond reduction hearing for Reyes), the state told the court the same attorney was representing both defendants and suggested the court advise Castaneda and Reyes of the possibility of a conflict. In response to the state's request, the court advised both men that, anytime codefendants were in a case, there was the possibility of a conflict because what might be in the best interest for one defendant might not be in the best interest for the other defendant. In response to questioning by the court, Castaneda and Reyes indicated they understood this possible conflict yet desired to continue being represented by the same attorney.
Although the state asked the court to advise Castaneda and Reyes of the possibility of a conflict of interest, at no time did either of the defendants or defense counsel object to the joint representation or notify the court of any possible conflict resulting from the joint representation. Multiple representation is not per se illegal and does not violate the Sixth Amendment to the United States Constitution or Article I, Section 13, of the Louisiana Constitution unless it gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475, 484 (La.1983). Even if a conflict exists, defendants who are represented by the same attorney may waive the conflict as long as the waiver is knowingly and intelligently made. "To be knowing and intelligent, the defendant must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel." Duncan v. Alabama, 881 F.2d 1013, 1017 (11th Cir.1989) (citing United States v. Garcia, 517 F.2d 272, 276 (5th Cir.1975)). When a trial court has no reason to believe that a conflict of interest exists, its failure to inquire concerning the propriety of joint representation or to advise a defendant of the right to conflict-free representation is not in itself a denial of any constitutional rights. United States v. Benavidez, 664 F.2d 1255, 1258 (5th Cir.), cert. denied, 457 U.S. 1121, 102 S.Ct. 2936, 73 L.Ed.2d 1334 and 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1352 (1982). See also Cuyler v. Sullivan, 446 U.S. 335, 346-47, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980); State v. Freeman, 409 So.2d 581, 586 (La.), cert. denied, 459 U.S. 845, 103 S.Ct. 100, 74 L.Ed.2d 90 (1982). Nor does the failure to advise of the right violate any statutory provision in Louisiana; unlike the Federal Rules of Criminal Procedure, the Louisiana Code of Criminal Procedure does not require a trial court to advise a defendant of the right to separate representation in those cases in which two or more defendants are represented by the same counsel. See Fed.R.Crim.P. 44(c).
In the instant case, although the state asked the court to advise Castaneda and Reyes of the possibility of a conflict, neither the prosecutor, defense counsel, nor Castaneda gave the court any reason to believe a conflict existed. Because the hearing held on the motion to suppress and preliminary examination had not yet occurred, there was no reason for the court on its own to suspect the possibility of a conflict. Accordingly, the trial *302 court did not err when it failed to specifically advise Castaneda of the right to conflict-free representation.
We also reject Castaneda's argument that the court took inadequate measures to determine if he understood the proceedings. At the beginning of the hearing, the court inquired into Castaneda's ability to understand English. When Castaneda replied that he understood English "a little bit," the court had an interpreter sworn to interpret the proceedings for him. Although appellate counsel has attached to defendant's brief copies of two letters, such attachments may not be considered by this court on appeal. Only that which is in the record may be reviewed by an appellate court on appeal. See State v. Robertson, 518 So.2d 579, 585 (La.App. 1st Cir.1987), writ denied, 523 So.2d 227 (La. 1988).
This assignment is without merit. Castaneda's related argument, that his attorney was ineffective because of the conflict of interest, will be discussed in connection with the sixth assignment of error.

DENIAL OF MOTION TO SUPPRESS EVIDENCE
In the second assignment, Castaneda contends the court erred when it denied his motion to suppress. He claims the motion should have been granted because the consent Reyes gave authorizing a search of the truck was not freely and voluntarily given. Initially, we note that, although Castaneda did not file a motion to suppress evidence, Reyes filed such a motion. See La.Code Crim.P. art. 842.
If a defendant pleads guilty after the denial of a motion to suppress without specifically reserving his right of appeal, he has waived the right to appeal the denial of the motion to suppress. See State v. Ealy, 451 So.2d 1351, 1352 (La.App. 1st Cir.1984). Castaneda acknowledges that he did not reserve the right to appeal the court's denial of the motion to suppress, but he claims the assignment should be considered anyway because his trial counsel was ineffective. However, neither in this assignment of error (claiming error in the denial of the motion to suppress) nor in the sixth assignment (claiming ineffective assistance of counsel) has Castaneda argued the issue of ineffective assistance of counsel resulting from failure to reserve appellate review of the court's ruling on the motion to suppress. When Castaneda entered his plea, he did not reserve the right under State v. Crosby, 338 So.2d 584, 586 (La.1976), to appeal the court's denial of the motion to suppress, and he specifically waived any pre-plea "vices and defects." Thus, we will not consider this assignment of error.
Moreover, even if we were to consider the merits of the assignment, we would find no error in the court's denial of the motion to suppress. Contrary to Castaneda's assertions on appeal, Reyes' consent to search the truck was freely and voluntarily given after he was advised that he did not have to consent, and the marijuana was detected in the trailer only after a drug detection dog alerted to its presence as it was being walked to the cab of the truck.
For these reasons, this assignment of error is without merit.

ADEQUACY OF FACTUAL BASIS FOR GUILTY PLEA
In the fourth assignment, Castaneda asserts the court erred when it determined the guilty plea was entered voluntarily. He specifically argues the court should have inquired into the factual basis for the plea when he denied knowing about the marijuana.
During the guilty plea colloquy, Castaneda told the court he wanted to plead guilty; and the court advised him of the rights he was waiving by pleading guilty. Defense counsel told the court that Castaneda understood his rights and was entering a "best interest plea under [North Carolina v. Alford]." In support of a factual basis for the guilty plea, the state submitted the transcript of the motion to suppress and preliminary examination, the videotape of the traffic stop, and a copy of the crime laboratory report. After being questioned by the court, Castaneda admitted to those facts. Before the proceedings concluded, Castaneda reiterated that he wanted *303 the court to accept his guilty plea. Later, after the court had taken pleas and imposed sentences in unrelated cases, the court asked Reyes how much he was supposed to be paid in connection with his transportation of the marijuana in this case. Reyes responded that, if he had known drugs were in the trailer, he never would have come into Louisiana. He explained that "we cross checkpoints every time we leave Texas." Reyes also emphasized that he had no criminal record and his arrest in this case had destroyed his family. Reyes then specifically denied that he knew marijuana was in the vehicle. He said he was a professional musician and did not need "that problem." The court then asked Castaneda if he was going to admit his guilt. The interpreter, replying on behalf of Castaneda, said, "He says he does not know of the people he speaks of and that he really did not know anything and that he's innocent and he's just pleading guilty to get it over with." The court then asked Reyes about the statement he gave to the police in which he admitted knowing about the marijuana. Reyes denied telling the police that he knew about the marijuana. Reyes said that a note he and Castaneda found in the truck instructed them to drive the truck to Alabama and pick up an automobile at a truck stop. After a bench conference, the court did not discuss the facts any further. Before the proceedings concluded, Reyes and Castaneda told the court they had known each other as a result of playing music together for about three or four months before their arrest.
An express admission of guilt is not a constitutional requirement for the imposition of a criminal penalty. The fact that a defendant believes he is innocent, and makes such belief known to the court, does not preclude him from entering a guilty plea. State v. McCarty, 499 So.2d 292, 294 (La. App. 1st Cir.1986), writ denied, 505 So.2d 56 (La.1987). As the United States Supreme Court indicated in North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970), "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, pleas coupled with claims of innocence should not be accepted "unless there is a factual basis for the plea" and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence. North Carolina v. Alford, 400 U.S. at 38 n. 10, 91 S.Ct. at 167-68 n. 10.
The United States Supreme Court has not specified the type of "factual basis" which is sufficient to make the showing required by Alford. Relying on statements in Alford that there was "strong evidence of actual guilt," "overwhelming" evidence, and a "strong factual basis" for the plea which occurred in that case (400 U.S. at 37 & 38, 91 S.Ct. at 167 & 168), the Second Circuit Court of Appeal in Louisiana has required that there be "strong evidence of actual guilt" or a "significant factual basis" to support a plea which is entered under Alford. See State v. Jordan, 619 So.2d 648, after remand, 619 So.2d 647 (La.App.2d Cir.1993); State v. Linear, 600 So.2d 113, 115 (La.App.2d Cir. 1992). However, while such a factual basis would be considered sufficient to support a plea in which the defendant professes his innocence, a factual basis of that degree is not essential. See State v. Lapoint, 93-1141 (La.App. 3d Cir. 4/6/94), 635 So.2d 554, 556, writ granted and vacated, 94-1173 (La. 9/23/94), 642 So.2d 1304. In Willett v. Georgia, 608 F.2d 538 (5th Cir.1979), the court adopted the following test in reviewing the sufficiency of a factual basis for a plea entered in state court in which the defendant professes his innocence:
Based on Alford ..., we hold that, when a defendant pleads guilty while claiming his or her innocence, the court commits constitutional error in accepting the plea unless the plea is shown to have a factual basis. In the face of a claim of innocence a judicial finding of some factual basis for defendant's guilt is an essential part of the constitutionally-required finding of a voluntary and intelligent decision to plead guilty. *304 608 F.2d at 540 (footnote omitted; emphasis added). The court noted that proof of every element of the offense beyond a reasonable doubt was not required. 608 F.2d at 541 n. 3. See also State v. Schexnayder, 93-01673 (La.App. 3d Cir. 4/20/94), 640 So.2d 426 ("a sufficient factual basis to enable the judge to test whether the plea was intelligently entered"). Cf. Gregory v. Solem, 774 F.2d 309, 312 (8th Cir.1985), cert. denied, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 730 (1986) ("sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense").
In the instant case, when Castaneda was stopped, he was driving a truck which pulled an empty car trailer. Concealed in the trailer were 27 packages of marijuana. Castaneda told the officer he and Reyes were on their way to Florida; but Reyes told the same officer they were headed to Mississippi. According to the affidavit of probable cause, Castaneda appeared "highly nervous." Despite Castaneda's protestation that he "really did not know anything," he repeatedly told the court he wanted to plead guilty. While we recognize that the facts supporting the charge against Castaneda are not as strong as the facts against Reyes, after reviewing the record we find a sufficient factual basis to support a finding that it was likely Castaneda knew about the marijuana. The evidence supports the trial court's determination that Castaneda's plea was entered voluntarily. We thus reject this assignment of error.

INEFFECTIVE ASSISTANCE OF COUNSEL
In the sixth assignment, Castaneda cites the following conduct by his trial counsel in support of his claim that counsel was ineffective: (1) counsel represented both Castaneda and Reyes despite the presence of a conflict; (2) counsel was willing to waive his right to jury trial and submit the case for trial on the basis of the existing record; (3) counsel failed to investigate a viable defense despite the absence of evidence that Castaneda was aware of the presence of the marijuana; and (4) counsel failed to determine if Castaneda understood the proceedings.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 13, of the Louisiana Constitution. An attorney owes his client a duty of loyaltya duty to avoid conflicts of interest. Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Counsel also has a duty to conduct reasonable investigations or to make a reasonable decision that a particular investigation is unnecessary. Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel, he must establish two separate elements to succeed:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. In those cases in which the defendant has pleaded guilty, to prove the "prejudice" component he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).
When a claim of ineffective assistance of counsel is raised on appeal, the issue is generally referred to post-conviction proceedings in which both sides can introduce evidence and the validity of the claim can be properly determined. State v. Wille, 559 So.2d 1321, 1339 (La.1990). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La. *305 App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).

Conflict Of Interest
As we indicated in connection with our treatment of the first assignment, multiple representation does not presumptively result in the ineffective assistance of counsel so as to violate constitutional guarantees unless it gives rise to a conflict of interest. State v. Lobato, 603 So.2d 739, 749 (La.1992). Where a defendant raises the issue of ineffective assistance of counsel due to conflict of interest prior to trial, the trial court must "either ... appoint separate counsel or ... take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." Holloway v. Arkansas, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). If the trial court improperly requires joint representation over timely objection, prejudice is presumed and reversal is automatic. Holloway, 435 U.S. at 488-89, 98 S.Ct. at 1181. Where there has been no objection to the multiple representation prior to or during trial, the defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance" in order to establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment. Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). The mere "possibility" of conflict is insufficient to impugn a criminal conviction; the defendant must show that his counsel actively represented conflicting interests. A defendant who shows that a conflict of interest actually affected the adequacy of counsel's representation need not demonstrate prejudice in order to obtain relief. Sullivan, 446 U.S. at 349-50, 100 S.Ct. at 1719.
The time at which the conflict of interest issue is raised is determinative of whether the Holloway or Sullivan standard is to be applied. If the conflict is raised before trial, the Holloway standard applies. If raised after trial, the Sullivan standard applies. State v. Wille, 595 So.2d 1149, 1153 (La.), cert. denied, ___ U.S. ___, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). In the instant case, defendant urges that the Holloway test should apply because the state called the issue to the court's attention. However, the fact that the state expressed concern over the potential conflict does not, in itself, give rise to the presumption of prejudice contained in the Holloway standard. See State v. Hughes, 587 So.2d 31, 40 (La.App.2d Cir. 1991), writ denied, 590 So.2d 1197 (1992). See also State v. Seay, 521 So.2d 1206, 1211 (La.App.2d Cir.1988). Thus, the Sullivan standard applies; and we must determine if Castaneda has established that an actual conflict of interest adversely affected his attorney's performance.
In his brief of the first and sixth assignments, Castaneda notes that, in statements to the police, he denied any knowledge about the marijuana but Reyes admitted knowing about it. Castaneda also remarks that he and Reyes gave conflicting statements about their destination upon being questioned by the police. In assessing whether a conflict of interest exists, a court must be convinced that the conflict is actual, not merely hypothetical or speculative. Actual conflicts of interest that adversely affect counsel's performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual conflict. State v. Lobato, 621 So.2d 103, 105 (La.App.2d Cir.1993), writ granted in part and denied in part, 627 So.2d 644 (La.1993). See State v. Franklin, 400 So.2d 616, 620 (La.1981). An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. State v. Kahey, 436 So.2d 475, 484 (La.1983). The mere fact that the evidence against one codefendant is stronger than that against the other does not indicate, much less demonstrate, the existence of a conflict of interest between the defendants. State v. Edwards, 430 So.2d 60, 62 (La.1983). Nor is the mere allegation that one codefendant intends to point an accusing finger at the other codefendant sufficient to support a claim of actual conflict of interest. Kahey, 436 So.2d at 485. Faced with a case in which the evidence is stronger against one defendant than against the other, the attorney representing the defendant for which the *306 state has the least evidence might want to bring the comparison of the evidence to the attention of the jury; but, if the same attorney were to represent the defendant for which the state has stronger evidence, a conflict would exist. However, strategic advantages can result from joint representation. A common defense often gives strength against a common attack. Additionally, joint representation can insure against reciprocal recrimination, such as might occur if either Reyes or Castaneda, or both, decided to testify against the other in an effort to reduce either the charge or the sentence. See Holloway, 435 U.S. at 482-83, 98 S.Ct. at 1178; W. LaFave & J. Israel, Criminal Procedure § 11.9, p. 77 (1984).
In the instant case, there is no showing in the record that Castaneda's attorney was ever faced with a situation in which he was forced to choose between the interests of one client over the other. See Barrientos v. United States, 668 F.2d 838, 841 (5th Cir. 1982). Both Castaneda and Reyes had the same interest, to plead guilty. Reyes' confession neither implicated not exonerated Castaneda. Thus, Castaneda has failed to demonstrate that an actual conflict of interest adversely affected his attorney's performance. If Castaneda desires to expand upon his claim of conflict of interest and prove his allegations, his proper remedy is by post-conviction relief, wherein an evidentiary hearing could be conducted. See State v. Walter, 542 So.2d 586, 590 (La.App. 1st Cir.), writ denied, 546 So.2d 1222 (La.1989).

Willingness To Waive Right To Jury Trial
Two days before Castaneda pleaded guilty, the state severed Castaneda and Reyes and indicated that it was going to try Reyes first. Defense counsel then indicated that he had talked to his clients and that they wanted to waive the right to trial by jury and submit the case for trial based on the prior testimony (taken at the hearing held on the motion to suppress and preliminary examination). On appeal, Castaneda claims that counsel's willingness to waive the right to a jury and submit the case based on the existing record is prima facie ineffective assistance of counsel. Because the state refused defense counsel's suggestion that the case be tried on the basis of the existing record and because both Castaneda and Reyes ultimately pleaded guilty, Castaneda's allegation that counsel was ineffective on this ground is devoid of merit.

Failure To Investigate
Castaneda faults his attorney for not conducting an investigation to determine if there was a viable defense. Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether or not the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial. Hill v. Lockhart, 474 U.S. at 59, 106 S.Ct. at 370. A defendant who asserts a claim of ineffective counsel based upon a failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome of a trial. United States v. Green, 882 F.2d 999, 1003 (5th Cir.1989). See also Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. General statements and conclusory charges will not suffice. State v. Outley, 629 So.2d 1243, 1254 (La.App.2d Cir.1993), writ denied, 94-0410 (La. 5/20/94), 637 So.2d 476.
In this case, Castaneda neither argues, nor does the record reveal, any specific evidence counsel could have presented which would have had an effect on the outcome of a trial and, thus, led counsel to change his recommendation as to the plea. Thus, Castaneda has failed to establish counsel's ineffectiveness in this area. Furthermore, decisions relating to investigation, preparation, and strategy cannot possibly be evaluated on appeal because an evidentiary hearing was not held on this issue. See State v. Lockhart, 629 So.2d 1195, 1208 (La.App. 1st Cir.1993), writ denied, 94-0050 (La. 4/7/94), 635 So.2d 1132.

*307 Failure To Investigate Castaneda's Competency
Castaneda further argues that counsel was deficient because of his failure to determine if Castaneda understood the proceedings. Castaneda alleges that his attorney knew he was receiving supplemental social security benefits as the result of mental problems and knew he had vision problems and suicidal tendencies. A defendant, who after pleading guilty, challenges the failure of his attorney to investigate his competency, can succeed in establishing the "prejudice" component of Strickland "only if he can demonstrate by a reasonable probability that he was incompetent to plead guilty." Theriot v. Whitley, 18 F.3d 311, 313 (5th Cir.1994). The record gives no indication that Castaneda was incompetent when he pleaded guilty, nor does Castaneda even make such an allegation. Should Castaneda desire to expand on and prove this claim, he must do so at a hearing held in connection with a post-conviction relief application.
For these reasons, this assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
SHORTESS, J., dissents with reasons.
SHORTESS, Judge, dissenting.
I would remand this case and order an evidentiary hearing on the issue of defendant's right to conflict-free representation. The hearing on Reyes' motion to suppress unquestionably demonstrated a conflict between defendant and Reyes. Defendant may have wanted to be represented by the same lawyer, despite the conflict which existed, but at this point, we do not know what (if any) options were give to Castaneda and Reyes by their lawyer.
I respectfully dissent.
NOTES
[1] In reviewing this case, we also have considered pertinent transcripts, pleadings, and exhibits contained in the record of Ralph Reyes. Reyes separately appeals his conviction under 94 KA 1114. Castaneda and Reyes were charged in the same bill of information and pleaded guilty in the same proceeding in the district court.