720 So.2d 153 (1998)
STATE of Louisiana
v.
Stacey D. MATTHEWS, Frankie Morrison a/k/a Franklin Morrison, Sr. & Franklin Morrison, a/k/a Franklin Morrison, Jr.
No. 98-KA-252.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1998.
Rehearing Denied November 17, 1998.
*155 A. Bruce Netterville, Gretna, for defendants/appellants.
Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Joan Benge, Assistant District Attorneys, Gretna, for plaintiff/appellee.
DALEY, Judge.
Defendants, Stacey Matthews, Franklin Morrison Jr., and Franklin Morrison Sr.[1], appeal their convictions of possession of cocaine, a violation of LSA-R.S. 40:967(F)(1)(a). On appeal, they raise the following assignments of error:
1. The trial court committed reversible error by allowing introduction of "Bad Acts" which occurred after the offense for which the defendants were on trial.
2. Trial court committed reversible error by allowing one attorney to represent all three defendants at trial, where conflicting defenses were available without determining whether defendants understood their rights to separate legal counsel and to severance.
3. Trial court committed reversible error by allowing Agent Barnes to give his opinion about the average strength of cocaine and of cutting the same where he had not been offered as an expert.
4. Trial court committed reversible error when it failed to order the state to produce a confidential informant when the state knew the informant's location and his testimony was crucial.
5. Trial court committed reversible error when Agent Barnes was permitted to give hearsay testimony of the informant.
6. Trial court committed reversible error when it failed to order the state to produce the informant when he had received the cocaine but the state's *156 witness could not testify as to how the informant obtained the cocaine.
7. Trial court committed reversible error when it allowed Agent Cooley to narrate and comment on the state's audiotape.
8. Trial court committed reversible error when it allowed Agent Cooley to give his opinion of the street value of cocaine without his being qualified as an expert witness.
9. Trial court committed reversible error when it imposed an excessive sentence on Frankie Morrison.
For the following reasons, we affirm the convictions and sentences, and remand with instructions.

STATEMENT OF THE CASE AND FACTS
On April 1, 1996, the Jefferson Parish District Attorney's Office filed a Bill of Information charging each of the defendants, Stacey D. Matthews, Frankie Morrison and Franklin Morrison, with one count of possession of between 28 grams and 200 grams of cocaine, in violation of LSA-R.S. 40:967(F)(1)(a). The crime allegedly occurred on February 1, 1996. On April 11, 1996, Stacey D. Matthews was arraigned and pled not guilty. Both Frankie Morrison and Franklin Morrison pled not guilty at their arraignment on June 27, 1996.
On March 20, 1997, the district attorney filed a Notice of Its Intent to Introduce Evidence of Other Crimes as per State v. Prieur, 277 So.2d 126 (La.1973). A hearing was held, after which the trial court ruled that the state could introduce evidence of other crimes. On the same day, the three defendants were tried by a jury of twelve. On March 21, 1997, the jury returned a ten to two verdict of guilty as charged as to Stacey D. Matthews, and unanimous verdicts of guilty as charged as to both Frankie Morrison and Franklin Morrison. Verbal polling was conducted.
On May 13, 1997, the state filed separate multiple offender Bills of Information alleging that Frankie Morrison was a fourth felony offender, and that Franklin Morrison was a second felony offender.
Original sentencing for all three defendants was held on May 14, 1997. The trial judge sentenced the defendants as follows: Frankie Morrison, Sr. to serve thirty (30) years imprisonment at hard labor; Stacy D. Matthews to serve ten (10) years imprisonment at hard labor; and Franklin Morrison, Jr. to serve fifteen (15) years imprisonment at hard labor. Defense counsel orally objected to the sentences and notified the trial court that he intended to file Motions to Reconsider the sentences imposed.
On May 15, 1997, the defense attorney filed Motions to Reconsider the three defendants' original sentences on the grounds that the sentences imposed were excessive. On the same day, defense counsel filed Motions for Appeal, which were granted by the trial court on May 16, 1997.
On June 11, 1997, the state filed a multiple offender Bill of Information alleging Stacey D. Matthews to be a second felony offender. Mr. Matthews denied the allegations on the same day.
On June 16, 1997, pursuant to LSA-C.Cr.P. art. 821, Stacey Matthews filed an untimely pro se Motion for Lesser Verdict or Judgment of Acquittal.
On August 13, 1997, the trial court adjudicated Stacey Matthews as second felony offender. The trial court vacated the original sentence imposed and sentenced the defendant to serve an enhanced sentence of thirty (30) years imprisonment at hard labor, without benefit of probation or suspension of sentence, and to pay a fifty-thousand ($50,000.00) dollar fine. The defendant's attorney objected to the sentence as excessive.
On August 20, 1997, the trial court adjudicated Franklin Morrison a second felony offender. The trial court vacated the original sentence and sentenced the defendant to serve an enhanced sentence of forty-five (45) years imprisonment at hard labor, without benefit of probation or suspension of sentence. The defendant's attorney orally objected to the sentence on the ground that it was excessive.
On September 17, 1997, the trial court adjudicated Frankie Morrison a triple felony offender. The trial court vacated the original *157 sentence, and sentenced the defendant to serve an enhanced sentence of one hundred twenty (120) years imprisonment at hard labor, without benefit of probation or suspension of sentence. The defendant's attorney objected to the enhanced sentence.

FACTS
Testimony in the record established that on February 1, 1996, the defendants met with an undercover DEA agent and Norman Trahan, a confidential informant, at the Schwegmann's on the Westbank Expressway. The undercover agent purchased five ounces of cocaine from the defendants, and paid the defendants with marked bills totaling forty-five hundred dollars ($4,500.00). The cocaine weighed approximately one hundred and thirty-three and seven tenths (133.7) grams.
Thereafter, the undercover agent had various telephone conversations with the defendants regarding a second drug purchase. At approximately 11:20 a.m. on February 26, 1996, the undercover agent spoke with Frankie Morrison and Franklin Morrison over the telephone about making a second cocaine purchase. However, Frankie Morrison asked the agent to call him back in an hour. At approximately 2:00 p.m. that same day, the agent spoke with Frankie Morrison and Franklin Morrison about the possibility of purchasing one-half (1/2) kilogram of cocaine.
On February 29, 1996, at approximately 2:30 p.m., the undercover agent telephoned Frankie Morrison, who told the agent that he would not be able to meet him with the cocaine until after 3:00 p.m. that afternoon. The agent verified with Frankie Morrison that the purchase price for another five (5) ounces of cocaine would be forty-five hundred dollars ($4,500.00). When the undercover agent was notified by the surveillance team that the defendants were in the area, he terminated taping telephone conversations and hid the tape recorder. Frankie Morrison called the agent later that afternoon to tell the agent to meet him at a car wash located at the corner of Holmes and Terry Parkway.
The undercover agent and Mr. Trahan drove to the car wash, where they met with Frankie Morrison and Stacey Matthews. Upon reaching the car wash, Agent Cooley met with Frankie Morrison and Stacey Matthews about purchasing five (5) ounces of cocaine. Due to problems with exchanging the money and the drugs, Agent Cooley determined that the defendants were not going to close the deal with him, so he walked to his car to notify the surveillance team that he could not complete the drug deal. Just as Agent Cooley notified the surveillance team that the deal was not going to happen, Franklin Morrison arrived at the car wash. The agent knew that there were outstanding warrants for the defendants' arrest for the February 1, 1996 cocaine sale, so he walked back to his car to notify the surveillance teams to arrest the defendants. Thereafter, the surveillance officers arrived at the scene and arrested the three defendants for selling between 28 grams and 200 grams of cocaine on February 1, 1996.
The tape recordings of all of the telephone conversations were played for the jury.
The defense did not present any evidence.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant complains that the trial court erred by allowing the state to introduce evidence of other crimes committed by the defendant. Specifically, the defendant complains that the trial judge should not have permitted the state to present evidence of acts that were committed after the commission of the crime for which the defendant was standing trial. The defendant argues that these subsequent acts could not possibly show criminal intent, motive, or plan regarding a crime previously committed.
The state replies that the trial court properly admitted the evidence of other crimes because the state "introduced the evidence of other crimes ... to prove the defendants' knowledge and absence of mistake, but most importantly to show the defendants' system or modus operandi." The state specifically argues that there is no temporal restriction to LSA-C.E. art. 404(B).
At the Prieur hearing on March 21, 1997, the defense attorney objected on the ground *158 that the events all occurred "subsequent to the instant charge," which, according to the Bill of Information, occurred on February 1, 1996. The trial judge noted the defense objection.
LSA-C.E. art. 404(B) provides in pertinent part:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
(Emphasis added).
Notably, the language of LSA-C.E. art. 404(B) is not limited to prior crimes, wrongs or acts, but merely refers to other crimes, wrongs or acts.
In State v. Eisbruckner, 96-252 (La.App. 5 Cir. 1/15/97), 688 So.2d 39, writ denied, 97-0429 (La.9/5/97), 700 So.2d 502, the defendant was charged with second degree murder. Specifically, the defendant allegedly set fire to the victim's home, and the victim died of asphyxia due to smoke inhalation. The state filed a Notice of Its Intent to Introduce Evidence that five (5) months after the crime for which the defendant was on trial, the defendant threatened to burn down another person's trailer home.
This Court held that the introduction of evidence relating to the threat that occurred subsequent to the commission of the crime for which the defendant was on trial was properly admitted. Eisbruckner, 688 So.2d at 41. This Court explained as follows:
Under State v. Prieur, 277 So.2d 126 (La.1973), and Art. 404B, the basic criteria for introduction of evidence of other crimes, as correctly stated by the trial judge, is (1) the evidence is not merely repetitive and cumulative, (2) the evidence is introduced for a relevant purpose and is not a subterfuge for depicting the defendant's bad character and (3) the evidence serves the actual purpose for which it is offered. See also State v. Hatcher, 372 So.2d 1024 (La.1979).
Here, we cannot say the trial judge erred. Eisbruckner's inclination to intentionally set things on fire when upset or provoked was relevant to show he intended to and did in fact set fire to Mrs. Geoghegan's house. Evidence of other crimes is allowed when the probative value outweighs its prejudicial effect. See State v. Hamilton, 478 So.2d 123 (La.1985), cert. denied at 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).
Id. See also State v. Morris, 259 La. 1001, 254 So.2d 444, 447-448 (La.1971), cert. denied, 406 U.S. 959, 92 S.Ct. 2066, 32 L.Ed.2d 346 (1972) (When offered to show guilty knowledge, or intent, it is no ground for objection that the proffered evidence concerns offenses occurring after the offense for which the accused is being tried, provided the time interval does not dim the connexity).
In the present case, at the Prieur hearing the state introduced the testimony of Agent Cooley regarding the events of February 26-29, 1996, as related above.
Based on a review of its Notice of Intent, the state complied with the notice requirements set forth in Prieur. Moreover, considering Agent Cooley's testimony at the Prieur hearing, the state proved by a preponderance of the evidence that the defendants spoke with Agent Cooley on several occasions after February 1, 1996 for the purpose of selling the officer another five (5) ounces of cocaine. Although the defendants argue otherwise, the evidence the state introduced regarding the subsequent conversations about a subsequent cocaine sale is probative of the defendants' system and plan to sell cocaine. In fact, the district attorney asked Agent Cooley if the February 1, 1996 conversation was *159 "the same kind of M .O. [modus operandi], wasn't it, that the dope was in another car," to which the agent responded affirmatively. According to Eisbruckner and Morris, the fact that the acts occurred after the instant crime does not in and of itself render the evidence inadmissible. On balance, the probative value of this other crimes evidence with respect to the issues of system and plan outweighs any prejudicial effect the defendants sustained due to the admission of the evidence.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
The defendants complain that they received ineffective assistance of counsel because their trial counsel failed to raise the issue of a conflict of interest during the defendants' trial. Specifically, the defendants complain that their trial counsel should have requested that each of the three defendants be appointed separate legal counsel because they might have wanted to present antagonistic defenses. The defendants also complain that the trial court erred because it did not conduct a hearing pursuant to United States v. Garcia, 517 F.2d 272, 276 (5th Cir. 1975).
This Court discussed the relationship between conflicting interests and effective assistance of counsel in State v. Franco, 94-265, pp. 7-10 (La.App. 5 Cir. 11/16/94), 646 So.2d 1043, 1047-1048, writ denied, 94-3099 (La.4/28/95), 653 So.2d 588, stating as follows:
Both the United States Supreme Court and the Louisiana Supreme Court have given great consideration to the relationship between conflicting interests and effective assistance of counsel. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). State v. Carmouche, 508 So.2d 792 (La.1987); State v. Wille, 595 So.2d 1149 (La.1992). The courts have established two avenues for identifying and resolving Sixth Amendment violations due to a conflict of interest, depending upon when the issue is raised.
Where the defendant raises the issue of ineffective assistance of counsel due to conflict of interest prior to trial, the trial judge must "either ... appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest was too remote to warrant separate counsel." State v. Wille, supra at 1153, quoting from Holloway, supra. If, as in the instant case, the defendant did not raise the issue of conflict of interest until after trial, he is required to show that "an actual conflict of interest adversely affected his lawyer's performance" in order to establish a Sixth Amendment violation. Id., quoting from Cuyler v. Sullivan, supra.
The Louisiana Supreme Court has found that an actual conflict exists where
a defense attorney owes duties to a party whose interests are adverse to those of the defendant.... The interest of the other and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
State v. Kahey, supra 436 So.2d [475] at 484 [(La.1983)], quoting Zuck v. Alabama, 588 F.2d 436 (5th Cir.1979), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). (Emphasis added).
In the present case, on appeal, the defendants' appellate counsel suggests for the first time that there was a conflict of interest because the defendants were all represented by the same trial attorney. The defendants' appellate attorney does not suggest that the defendants' trial attorney owed a duty to one of his clients to take a course of action that could be detrimental to one or both of his other clients. The defendants' appellate attorney discusses the possibility of antagonistic defenses without giving any grounds for such defenses. Moreover, a review of the defendants' trial attorney's closing argument reflects that the unified defense strategy was to place the blame for the possession of the cocaine on the confidential informant. The record shows, therefore, that their defenses were not antagonistic, and that the possibility of antagonistic defenses is appellate counsel's speculation. Defendants never requested a severance on this or any other basis.
*160 Moreover, with respect to the defendants' claim that the trial judge should have conducted a hearing pursuant to United States v. Garcia, 517 F.2d 272, 276 (5th Cir. 1975), "[w]hen a trial court has no reason to believe that a conflict of interest exists, its failure to inquire concerning the propriety of joint representation or to advise a defendant of the right to conflict-free representation is not in itself a denial of any constitutional rights." State v. Castaneda, 94-1118, pp. 4-5 (La.App. 1 Cir. 6/23/95), 658 So.2d 297, 301. Nor does the failure to advise the defendants of the right to conflict-free representation violate any statutory provision in Louisiana; "unlike the Federal Rules of Criminal Procedure, the Louisiana Code of Criminal Procedure does not require a trial court to advise a defendant of the right to separate representation in those cases in which two or more defendants are represented by the same counsel." Id.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant argues that he received ineffective assistance of counsel because his trial attorney failed to object to testimony given by a state witness regarding the average strength of cocaine and the method by which cocaine is "cut" for distribution on the street. Specifically, the defendant complains that because this agent was never qualified as an expert witness on cocaine and/or its preparation for distribution, his trial attorney should have objected to DEA Agent Wade Barnes' testimony that seventy-one (71%) percent was the average strength of cocaine.
The record reflects that the prosecutor and defense counsel entered into a joint stipulation regarding the lab report of the analysis of the cocaine. Agent Barnes testified that he had reviewed the lab report. Therefore, the witness' testimony is, at best, harmless error. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Trial court committed reversible error when it failed to order the state to produce a confidential informant when the state knew the informant's location and his testimony was crucial.

ASSIGNMENT OF ERROR NUMBER SIX
Trial court committed reversible error when it failed to order the state to produce the informant when he had received the cocaine, but the state's witness could not testify as to how the informant obtained the cocaine.

DISCUSSION
In these assignments of error, the defendants argue that they received ineffective assistance of counsel because their trial counsel failed to demand the presence and identity of the confidential informant at trial, thereby preventing them from raising an "entrapment" defense.
We note that in State v. Newton, 538 So.2d 752, 754 (La.App. 5 Cir.1989), this Court held that the record was not sufficient to determine whether trial counsel was ineffective for the failure to file a motion or to request a continuance of the trial in order to locate the confidential informant and, therefore, explained that the defendant could raise the issue by a petition for post-conviction relief. In the instant case, we find that the record is not sufficient to determine whether defendants' trial counsel's performance was deficient in this instance, and agree that this issue is best raised in a petition for postconviction relief.

ASSIGNMENTS OF ERROR NUMBERS FOUR AND SIXDISCUSSION
By these two assignments of error, the defendants complain that they received ineffective assistance of counsel because their trial attorney failed to demand the identity of the confidential informant and because he failed to demand that the confidential informant testify during the trial. He argues that he could have presented an entrapment defense if the informant had testified at trial. This court has already determined that it will not address the ineffective assistance of counsel claim, but will address the merits of the arguments regarding production of the confidential informant.
Contrary to the defendants' assertion on appeal, the defendants knew the identity of *161 the confidential informant. The state introduced audiotapes into evidence that reflect that the defendants personally knew Mr. Norman Trahan. The record is replete of instances, beginning with the state's first witness, wherein the state's witnesses refer to the confidential informant by the name "Norman Trahan."
Regarding the defendants' complaint that their trial attorney should have subpoenaed Mr. Trahan for the purpose of cross-examining him and thereby presenting a defense of entrapment, the record reflects that neither the state nor the defense sought Mr. Trahan's presence as a witness during the defendants' trial. Although the defendants' counsel complain that their trial attorney should have ensured that Mr. Trahan testified, it appears that the defendants' trial attorney's decision not to subpoena Mr. Trahan as a witness was a strategical decision. In State v. Franklin, 94-409, p. 19 (La.App. 5 Cir. 12/14/94), 648 So.2d 962, 968, writ denied, 95-0143 (La.5/19/95), 654 So.2d 1354, this Court held that trial counsel's failure to call particular witnesses and the failure to object to hearsay testimony regarding the witnesses could be considered as part of counsel's trial strategy.
In the present case, the defendants' trial attorney elicited information regarding the following facts: (1) that criminal charges were pending against Mr. Trahan in Terrebonne Parish; (2) that in return for Mr. Trahan's cooperation, the DEA sent a letter to the appropriate judge requesting that Mr. Trahan's cooperation be considered when sentence was imposed; and (3) that Mr. Trahan was paid by the DEA for his cooperation. During the defense attorney's closing argument, he highlighted these facts, as well as pointing out to the jury that Mr. Trahan was not present during the trial for cross-examination. The defense attorney also argued that Mr. Trahan "set up" the defendants "to try to feather his own nest." Had the defense attorney subpoenaed Mr. Trahan for questioning, Mr. Trahan would have had the opportunity to rebut these allegations.

ASSIGNMENT OF ERROR NUMBER FIVE
The defendant complains that the trial court erred when it permitted one of the state witnesses to give hearsay testimony. Specifically, the defendant complains that Agent Cooley was allowed, over defense objection, to testify regarding what Mr. Trahan told him immediately following the drug transaction.
The state argues that the testimony was properly admitted pursuant to LSA-C.E. arts. 801(D)(4), which provides for statements that are not hearsay, and 803(3), which provides an exception to the rule prohibiting the admission of hearsay.
LSA-C.E. art. 801(D) provides a list of types of statements that are not hearsay. LSA-C.E. art. 801(D)(4), which was one legal basis which the trial judge relied upon in overruling the defense objection to Agent Cooley's testimony, provides as follows:
Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
This "res gestae" doctrine in Louisiana is broad. It includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evidenced under the circumstances. State v. Williams, 614 So.2d 252 (La.App. 3 Cir.1993) (officer's testimony concerning radio transmission of conversation during drug buy was admissible under res gestae exception to hearsay rule); State v. O'Neal, 501 So.2d 920 (La.App. 2 Cir.1987) (testimony of officer as to contents of conversation between confidential informant and defendant heard over transmitter was admissible under res gestae exception to hearsay rule), writ denied, 505 So.2d 1139 (La.1987).
*162 In State v. Thompson, 27,543, pp. 9-10 (La.App. 2 Cir. 12/6/95), 665 So.2d 686, 692, the Second Circuit confronted the precise issue that is before this Court. The defendant complained that a state witness's testimony constituted hearsay and, therefore, that his attorney should have objected to the admission of such evidence. An undercover police officer testified that she saw the defendant hand the cocaine to another man, Rubin, who then brought the drug to the officer. The officer testified that, when Rubin gave her the drugs, he said "Here, Mel [the defendant] sent this." The Second Circuit held that Rubin's statement constituted res gestae because "[t]he statement was an integral part of the continuous transaction, linking Rubin's action with the deputies' previous conversation with the defendant. As such, it forms part of the res gestae of the crime, and is admissible." Id.
In the present case, Agent Cooley testified regarding the events that occurred on February 1, 1996. He testified that after he gave the forty-five hundred ($4,500.00) dollars to Frankie Morrison and Franklin Morrison, the two men wanted to know who was going "to walk and get the drugs." Agent Cooley told the men that Mr. Trahan was going to get the drugs, and then asked where the drugs were. According to Agent Cooley, Frankie Morrison said "over there," and pointed to the maroon Pontiac Firebird that Mr. Matthews was driving. Mr. Trahan got out of the car, walked over to the Firebird and got into the front passenger seat. Upon discovering that Agent Cooley was carrying a gun, the Morrisons became agitated and asked Agent Cooley to get out of the car, that "they had the money and I [Agent Cooley] had the package now."
Agent Cooley testified that at that point, he got into his undercover vehicle and asked Mr. Trahan, who had gotten out of the car Mr. Matthews was driving, whether he had gotten "the package." According to Agent Cooley, Mr. Trahan told him that Mr. Matthews would not give him the package until Frankie Morrison said that it was okay. Agent Cooley testified that Mr. Matthews rolled down the window of the Firebird and spoke with Frankie Morrison, but explained that he could not hear the conversation due to the rain and the noise from the cars. Thereafter, Mr. Trahan got back into the Firebird with Mr. Matthews. A few seconds later, Mr. Trahan got out of the Firebird and got into Agent Cooley's undercover vehicle. When asked what Mr. Trahan was carrying when he got into the undercover vehicle, Agent Cooley testified that Mr. Trahan was carrying "five ounces of a substance that tested positive for cocaine."
Agent Cooley's testimony regarding what Mr. Trahan said to him during said transaction constituted res gestae and, therefore, was properly admitted into evidence.

ASSIGNMENT OF ERROR NUMBER SEVEN
Trial court committed reversible error when it allowed Agent Cooley to narrate and comment on the state's audiotape.
The defendants complain about two separate issues. First, they complain that the trial court erred in permitting a state witness to comment and narrate regarding an audiotape that was played for the jury. Specifically, the defendants argue that Agent Cooley should not have been allowed to give impermissible opinion testimony regarding the content of the February 1, 1996 audiotape. Second, the defendants complain that the second audiotape (State Exhibit no. 4) constituted impermissible evidence under State v. Prieur, supra.
During the trial, the state introduced four audiotapes into evidence. After Agent Cooley testified regarding the events of the February 1, 1996 cocaine transaction, which forms the basis for the current charges against the defendants, the district attorney asked the agent whether an audiotape was made of the transaction. Agent Cooley responded affirmatively, and the state asked the trial judge for permission to play the audiotape (State Exhibit no. 3) for the jury. The defendants' trial counsel objected to the tape's admissibility, but did not state any grounds for the objection. The trial judge overruled the objection, without stating any reasons. Thereafter, the February 1, 1996 audiotape was played for the jury. As the audiotape played, Agent Cooley testified with *163 regards to the factual circumstances surrounding the voices on the tape.[2]
After the jury heard the February 1, 1996 audiotape, the district attorney requested permission to play a second audiotape for the jury. The second audiotape is a recording of conversations between Agent Cooley and the defendants occurring on February 26, 1996 and February 28, 1996. Specifically, the conversations were among those that the state had listed in its Prieur notice. The trial judge had already ruled the evidence of these telephone calls admissible. However, the defendants' trial attorney objected on the ground that the information therein constituted impermissible Prieur evidence. The trial judge overruled the objection. The defendants' trial attorney did not make any other objections.
Regarding the defendants' complaint that Agent Cooley should not have been allowed to give impermissible opinion testimony regarding the content of the February 1, 1996 audiotape, the defendants' trial attorney did not lodge an objection to Agent Cooley's testimony and, therefore, this issue was not preserved for appellate review. LSA-C.Cr.P. art. 841; State v. Pendelton, 96-367, p. 15 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, 153.
Even addressed on its merits, this complaint has no substance. LSA-C.E. art. 701 provides as follows:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
In Pendelton, this Court interpreted LSA-C.Cr.P. art. 701, and explained that "[g]enerally, a lay witness may only testify to facts within his knowledge, and not to impressions or opinions." Pendelton, 696 So.2d at 153. This Court explained further that "[a] witness is, however, permitted to draw reasonable inferences based on personal observations."
Agent Cooley merely commented upon the factual circumstances surrounding the taped conversations, such as whose voice the jury heard on the audiotapes as they played. Agent Cooley was one of the participants in the telephone conversations. As such, his testimony was not inadmissible opinion testimony.
With regards to the defendants' complaint that conversations contained on the second audiotape (State Exhibit no. 4) constituted impermissible evidence under Prieur, this issue was previously discussed in Assignment of Error Number One, and has no merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
The defendant complains that the trial court erred by allowing Agent Cooley to testify regarding the street value of cocaine when he was not qualified as an expert witness. As noted by the state's brief, the defendants' attorney did not object to Agent Cooley's testimony regarding the street value of cocaine. Therefore, this issue was not preserved for appellate review. LSA-C.Cr.P. art. 841; State v. Pendelton, supra.
Even addressed on its merits, this complaint has no substance, as the officer was testifying regarding matters that were within his personal knowledge and experience as a narcotics officer. Boyd, 649 So.2d at 84-85. Moreover, the price of the cocaine is not an element of the crime under the statute. This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER NINE
The defendants complain that their enhanced sentences are constitutionally excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit *164 the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Lassere, 95-1009 (La. App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Id.
The record reflects that defense counsel noted objections to the sentences imposed on the basis that said sentences were excessive, and that he filed motions for reconsideration of sentence based on excessiveness, as required by LSA-C.Cr.P. art 881.1. Therefore, this issue was preserved for appellate review. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212.

Stacey Matthews
Stacey Matthews was initially sentenced pursuant to LSA-R.S. 40:967(F)(1)(a) to serve the minimum sentence of imprisonment, which is (10) ten years at hard labor. However, Mr. Matthews was later adjudicated a second felony offender during the multiple offender hearing. The trial judge vacated the original sentence and resentenced the defendant to serve thirty (30) years at hard labor, without benefit of probation or suspension of sentence, and to pay a fifty thousand ($50,000.00) dollar fine.
LSA-R.S. 40:967(F)(1)(a) provides:
Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than ten years, nor more than sixty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
LSA-R.S. 40:967(G) provides as follows:
With respect to any person to whom the provisions of Subsection F are applicable, the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F.
LSA-R.S. 15:529.1(A)(2)(a) provides the applicable sentencing provision for second felony offenders:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
Therefore, following adjudication as a second felony offender, Stacey Matthews faced between thirty (30) and one hundred and twenty (120) years imprisonment at hard labor, plus a fine between fifty thousand ($50,000.00) dollars and one hundred and fifty thousand ($150,000.00) dollars. As such, he received the lightest sentence the judge could have imposed. This assignment of error has no merit.

Franklin Morrison, Jr.
Mr. Franklin Morrison was originally sentenced pursuant to LSA-R.S. 40:967(F)(1)(a) to serve fifteen (15) years imprisonment at hard labor. As previously noted, the minimum sentence of imprisonment is ten (10) years at hard labor. However, Mr. Franklin Morrison was later adjudicated a second felony offender during the multiple offender hearing. The trial judge vacated the original sentence and resentenced Mr. Franklin Morrison to serve forty-five (45) years imprisonment at hard labor, without benefit of probation or suspension of sentence.
Considering LSA-R.S. 40:967(F)(1)(a), 40:967(G), and LSA-R.S. 15:529.1, following adjudication as a second felony offender, Mr. Franklin Morrison faced between thirty *165 (30) and one hundred and twenty (120) years imprisonment at hard labor, plus a fine between fifty thousand ($50,000.00) dollars and one hundred and fifty thousand ($150,000.00) dollars. The term of imprisonment imposed is close to the low end of the sentencing range. Moreover, the trial judge did not require the defendant to pay a fine. Therefore, Mr. Franklin Morrison did not receive a sentence that is constitutionally excessive.

Frankie Morrison, Sr.
Mr. Frankie Morrison was originally sentenced pursuant to LSA-R.S. 40:967(F)(1)(a) to serve thirty (30) years imprisonment at hard labor. As previously noted, the minimum sentence of imprisonment is ten (10) years at hard labor, and the maximum sentence of imprisonment is sixty (60) years at hard labor. However, Mr. Frankie Morrison was later adjudicated a triple felony offender following the multiple offender hearing. The trial judge vacated the original sentence and resentenced the defendant to serve one hundred and twenty (120) years imprisonment at hard labor, without benefit of probation or suspension of sentence.
Regarding triple felony offenders, LSA-R.S. 15:529.1 A(1)(b) provides as follows:
If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Under the Uniform Controlled Dangerous Substances Law, possession of between twenty-eight (28) and two hundred (200) grams of cocaine, in violation of R.S. 40:967(F), is punishable for a term of imprisonment at hard labor for not less than ten (10) years, nor more than sixty (60) years. Considering LSA-R.S. 40:967(F)(1)(a) and LSA-R.S. 15:529.1, following adjudication as a triple felony offender, Mr. Frankie Morrison should have received a sentence of life imprisonment without benefit of parole, probation or suspension of sentence, plus a fine between fifty thousand ($50,000.00) dollars and one hundred and fifty thousand ($150,000.00) dollars.
Therefore, the trial judge imposed an illegally lenient sentence upon the defendant for the following reasons: (1) she sentenced the defendant to one hundred and twenty (120) years imprisonment, rather than life imprisonment; (2) she did not state that the defendant's one hundred and twenty (120) year sentence would be served without benefit of parole; and (3) she did not require the defendant to pay a fine. Therefore, Mr. Frankie Morrison did not receive a sentence that is constitutionally excessive.
We note the following error patent. The trial judge did not advise the defendants of the prescriptive period for post-conviction relief as mandated by LSA-C.Cr.P. art. 930.8(C). We, therefore, remand with instructions for the trial judge to: (1) inform the appellant of the provisions of this article by sending appropriate written notice to him within ten (10) days of this Court's opinion; and (2) to file written proof that the appellant received such notice. See State v. Bates, 96-9 (La.App. 5 Cir. 4/16/96), 673 So.2d 1085.
Accordingly, we affirm defendants' convictions and sentences. We remand with the above instructions.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Franklin Morrison Jr. is referred to as "Franklin," whereas Franklin Morrison Sr. is referred to as "Frankie."
[2] Although the defendants complain that the tape was not transcribed, the tapes were admitted into evidence as state exhibits, not testimony. The defendants also complain that the record does not reflect that the tape itself was heard by the jury, but the record does not support these contentions. The record reflects that the tapes were played for the jury.