703 So.2d 671 (1997)
STATE of Louisiana
v.
Guadalupe SALINAS.
No. CR97-716.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
*672 Robert Richard Bryant, Jr., Lake Charles, for State.
Phyllis E. Mann, Alexandria, for Guadalupe Salinas.
Before SAUNDERS, PETERS and AMY, JJ.
SAUNDERS, Judge.
The Defendant, Guadalupe Salinas, and his co-defendant, Erica Resendez, were charged with one count of possession of marijuana with intent to distribute, in violation of La. R.S. 40:966(A).
The Defendant and Ms. Resendez, the codefendant, were both appointed the same attorney at their right-to-counsel hearing held on January 22, 1997. Their attorney, appearing on their behalf, advised the trial court of the possible conflict of interest. The trial court then advised the Defendant and Ms. Resendez conflict-free counsel and that there may be a potential conflict of interest. Despite this, both parties agreed to retain the same attorney. His attorney then advised the trial court that the Defendant had been offered a plea of guilty to one count of possession of marijuana with intent to distribute and desired to enter a plea of guilty, and that the co-defendant had been offered a plea of guilty to a misdemeanor and desired to enter a plea of guilty. The Defendant's plea bargain envisioned a sentence recommendation of nine years. The trial court Boykinized Defendant about his constitutional rights, at which time Defendant chose to waive them. During the course of the plea colloquy, the trial court questioned *673 the State regarding Defendant's prior criminal history. At that time, the State showed a prior out of state conviction for vehicular assault, but was unable to determine whether that crime was a felony. The Defendant was placed under oath and questioned by the Court regarding his prior criminal history. The Defendant stated that he was not the individual involved in the vehicular assault offense and subsequently stated that he had no prior criminal history. The State then presented a joint recommendation to the court. The court informed Defendant that it was not bound by any recommendation and ordered a pre-sentence investigation report.
On February 24, 1997, Defendant appeared with counsel. The trial court stated for the record that Defendant was not truthful about his prior criminal history when he was previously questioned by the court. The trial court rejected the joint recommendation and sentenced Defendant to serve twenty-five years at hard labor. The trial court ordered Defendant to be immediately arrested for perjury, at which time Defendant was advised of his Miranda rights. On May 9, 1997, Defendant filed a Motion to Reconsider Sentence, a Motion and Order for Transcript, and a Motion to Withdraw Guilty Plea. On May 9, 1997, the Defendant withdrew his Motion to Withdraw Guilty Plea. Thereafter, the Motion to Reconsider Sentence was denied. Defendant now appeals his sentence and conviction, assigning seven errors committed by the trial court. However, Defendant abandons assignment of error number 4.

FACTS
On September 10, 1996, Lake Charles Police Officers Bellow and Sierra were traveling eastbound on Interstate 10, when they spotted a 1995 Chevrolet in the middle lane. The officers observed the vehicle "lane straddle," occupying two lanes at one time. This erratic driving behavior was observed several times before the officers motioned the vehicle to stop by using the unit's emergency lights and horn. Once the vehicle stopped, the driver exited his automobile and met Officer Bellow between the two vehicles. Officer Bellow asked him for his driver's license, at which time the driver, later identified as Guadalupe Salinas, the Defendant, advised that he did not have his driver's license at that moment. Officer Bellow asked the driver his name, and he indicated that his name was Joe Salinas. The Defendant was advised that he was stopped for "lane straddling." Defendant advised that he was sleepy and that was the reason for his erratic driving. Officer Bellow asked Defendant various routine questions. During this line of questioning, Defendant appeared very nervous.
Officer Bellow met with the passenger, Erica Resendez, the co-defendant. When Officer Bellow questioned her in the same manner that the Defendant had been questioned, she gave very different answers. While Officer Bellow was questioning Ms. Resendez, he could smell a very strong odor of marijuana coming from within the vehicle. Officer Bellow then asked Defendant if he could read and write the English language. The Defendant indicated that he could not. Officer Bellow gave a search and seizure form to Officer Sierra who at that time began to read the form to the Defendant in Spanish. Shortly thereafter, Defendant stopped Officer Sierra and advised that he could understand the form better in English. After Officer Sierra read the form, the Defendant then signed the form giving permission for the officers to search his vehicle for illegal contraband. During the search, the odor of marijuana appeared to be emitting from the trunk area. A large box was found in the trunk. Defendant advised the officers that the box contained a wedding present from his brother. Officer Bellow made a hole in the box, and the smell of marijuana became stronger. The hole was large enough that Officer Bellow observed an object that appeared to be a large brick of marijuana. At that time, the officers advised the Defendant and Ms. Resendez of their Miranda rights and arrested them. The Defendant and Ms. Resendez were transported to jail, and the vehicle was transported to the police station. Once at the police station, an extensive search was conducted. Approximately 63 pounds of marijuana was found in the box located in the trunk. The officers also found within the backseat of their police unit, in which the Defendant and Ms. Resendez were *674 transported to the police station, a small bag of white powder resembling cocaine. The next day the Defendant admitted that the marijuana was his and that Resendez did not know anything about it.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find the record contains one error patent.
The record indicates the trial court did not give the Defendant credit toward service of his sentence for time he spent in actual custody prior to the imposition of the sentence. As such, on remand, the trial court shall amend the sentence to reflect that the Defendant is given credit for time he served prior to the execution of the sentence. Further, the district court is ordered to amend the commitment and minute entry of the sentence to reflect credit for time served in conformity with La.Code Crim.P. art. 880. See La.Code Crim.P. art. 882(A) and State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94); 640 So.2d 561, writ denied, 94-1455 (La.3/30/95); 651 So.2d 858.

ASSIGNMENT OF ERROR NO. 7

(DEFENDANT'S ARGUMENT NO. 1)
Under this assignment of error, Defendant alleges counsel for the indigent defender was ineffective due to a conflict of interest that violated Defendant's right to effective assistance of counsel.
In the case at bar, the record indicates that the Defendant waived his right to conflict-free counsel. Defendants who desire to do so may waive a dual representation conflict of interest, as long as the waiver is knowingly and intelligently made. State v. Castaneda, 94-1118 (La.App. 1 Cir. 6/23/95); 658 So.2d 297. Thus, it was proper and legal for the Defendant to waive his right to conflict-free counsel, and even if a conflict exists, defendants who are represented by the same attorney may waive the conflict as long as the waiver is knowingly and intelligently made. Therefore, this court must determine whether the colloquy between the trial court and the Defendant sufficiently establishes the Defendant made a knowing and intelligent waiver of his right to conflict-free counsel. We find the record adequately supports that a knowing and intelligent waiver of such constitutional right was made by the Defendant.
"To be knowing and intelligent, the defendant must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel." Duncan v. Alabama, 881 F.2d 1013, 1017 (11th Cir.1989) (citing United States v. Garcia, 517 F.2d 272, 276 (5th Cir. 1975)). In United States v. Garcia, 517 F.2d 272, 278 (5th Cir.1975), the court stated the following:
[t]he district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. Cf. United States v. Foster, 469 F.2d 1 (1st Cir.1972). It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." National Equipment Rental v. Szukhent, 375 U.S. 311, 332, 84 S.Ct. 411, 423, 11 L.Ed.2d 354, 367-68 (1964). Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.
In the case sub judice, the right to counsel hearing reads in pertinent part:
THE COURT:

*675 Okay. You both understand English?
MR. SALINAS:
Yes, ma'am.
MS. RESENDEZ:
Yes.
THE COURT:
Okay. You both have the same attorney, Mr. Ritchie, and I can tell you with absolutely no reservations that he is one of the most honest people in the world that I have ever met before. But, because you're involved in the same case, there's a possibility that there may be a conflict between your interests and your interests, okay. I know, just let me finish, okay. I just want to explain it to you. There may be some kind of a conflict. And it's apparent to me from what's going on here, although I don't know any of the facts of the case, it's obvious to me that somebodyyou're Ms. Salinas?
MS. RESENDEZ:
No. Ms. Resendez.
THE COURT:
Ms. Resendez. And you're Mr. Salinas?
MR. SALINAS:
[Nods in the affirmative]
THE COURT:
That Ms. Resendez is getting a much better deal than you are, okay. That gives an appearance that there's a conflict. It may be totally justified under the facts of this particular case, but because it gives an appearance of conflict, I want to make sure that you know that you have a right to conflict-free counsel. And that means that if you think for any reason, Mr. Salinas, that you're not getting appropriate representation, that perhaps Mr. Ritchie likes Ms. Resendez more than he likes you, I don't think that's happening, but just whatever, you have a right to conflict-free counsel. If you wanted to and you couldn't afford it, I would appoint another lawyer to represent you, or represent you two separately. But you can waive that right. If you feel comfortable and you think you're being properly represented, and like I said, I think Mr. Ritchie is one of the most honest people in the world, you can waive that right if you want to.
MS. RESENDEZ:
Okay.
THE COURT:
And I'm going to give you that opportunity right now. You can think about it if you want to, or you can tell me right now.
MR. SALINAS:
No, that's all right.
THE COURT:
And identify yourself for the record, please.
MR. SALINAS:
It's okay, we want it like that.
THE COURT:
What's your name?
MR. SALINAS:
Guadalupe Salinas.
THE COURT:
Okay. This is Mr. Salinas. And you're going to waive your right to conflict-free counsel?
MR. SALINAS:
Yes, ma'am.
THE COURT:
All right. Ms. Resendez. I'm sorry. Do you wish
MS. RESENDEZ:
Yes.
THE COURT:
 to waive your right to conflict-free counsel?
MS. RESENDEZ:
Yes.
The record shows that the trial court conducted a Garcia hearing with regard to the possible conflict of interest. The court initially questioned the Defendant to determine whether he understood the English language to which the Defendant gave an affirmative response. The record also shows that the court advised the Defendant that because his co-defendant is getting a more lenient sentence, there is an appearance that there is a conflict, and he has the option to obtain conflict-free counsel. The trial court advised the Defendant that it wanted to be sure he understood he has a legal right to conflictfree counsel, and if necessary, another attorney *676 could be appointed. Next, the court advised the Defendant that he had the right to decide whether or not he wanted another attorney appointed. The court elicited a narrative response to each of these questions. The record further shows that the Defendant was at complete liberty to question the nature of the proceeding and consequences of his conflict-free representation, and the Defendant chose to waive his right to conflictfree counsel. We find that the record is clear that the Defendant understood that he had a right to have another attorney appointed and it was the Defendant's intention to abandon his right to conflict-free counsel.
In response to Defendant's contention that his counsel was ineffective due to a conflict of interest, "multiple representation is not per se illegal and does not violate the Sixth Amendment to the United States Constitution or Article I, [§ 13], of the Louisiana Constitution unless it gives rise to a conflict of interest." State v. Kahey, 436 So.2d 475, 484 (La.1983). Where there has been no objection to the multiple representation prior to or during trial, the defendant must "establish that an actual conflict of interest adversely affected his counsel's performance" in order to establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment. State v. Lobato, 621 So.2d 103 (La.App. 2 Cir.1993). The mere "possibility" of conflict is insufficient to impugn a criminal conviction; the defendant must show that his counsel actively represented conflicting interests. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
It is well established in Louisiana jurisprudence that the mere possibility of a conflict is insufficient to declare that an attorney's performance was adversely affected. In the case at bar, the record is completely devoid of any instances of where the Defendant's counsel was burdened with a conflict of interest, or that his counsel's performance adversely affected the Defendant's legal representation. The record shows that defense counsel promptly informed the court as to the possibility of a conflict and neither the prosecutor, defense counsel, nor the Defendant presented any reason to believe a conflict existed. Based upon findings in the record, we find there is no proof of any conflict of interest.
In Lobato, 621 So.2d at 105, the court held that an actual conflicts of interest that adversely affected counsel's performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual conflict. Here, the trial court obviously did not perceive a conflict of interest, but obliged in its duty to advise the Defendant concerning the possibility of a conflict of interest between the Defendant and Ms. Resendez. Moreover, the facts further reveal the Defendant and Ms. Resendez tendered a plea of guilty, and the Defendant admitted he knew of the marijuana and his co-defendant was not involved. See State v. Addison, 94-1423 (La.App. 4 Cir. 11/13/96); 684 So.2d 477, where the court held there was no conflict in joint representation since a co-defendant testified first and admitted to the offense. There is no evidence that defense counsel's representation was adversely affected such that it would constitute the type of actual conflict that merits relief. Accordingly, the Defendant's assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 1, 2, 3, 5 AND 6

(DEFENDANT'S ARGUMENT NO. 2)
Under his second argument, the Defendant combines error numbers one, two, three, five, and six. In this assignment of error, the Defendant alleges his twenty-five-year sentence is excessive. Finding that the trial court improperly relied on the defendant's untruthfulness regarding his prior criminal record in imposing a twenty-five-year sentence, we remand for resentencing.
The record establishes that the sentence imposed by the trial judge was based heavily on the defendant's untruthfulness to the court. We note, in pertinent part, the following reasons for sentencing:
"Mr. Salinas, I had a bad feeling about you, and, apparently, my instincts turned out to be correct, because in spite of the fact that you were placed under oath to tell the truth, you failed to do so, and I guess *677 it shouldn't be a great surprise to me that a drug dealer would be a liar too.
....
Based on your blatant lying to this Court, your criminal history which makes you a second felony offender, the amount of marijuana you had on the instant charge, and the fact that you got someone else, you had a co-defendant in this case, the fact that you got someone else who had no prior criminal history involved in a life of crime, I am going to reject the recommendation made by the District Attorney's Office. Instead, I am, number one, going to order that you be immediately placed under arrest for the crime of perjury, because in taking the oath and lying to me about your criminal record, you have, in no uncertain terms, committed that crime, and I'm going to direct that you be placed under arrest, and I hope the District Attorney's Office will prosecute you for that charge as a warning to others not to take lightly when questions are directed to you by the Court. We rely on people who areeven people who are charged with crimes to tell us the truth, and when they don't, I can tell you I take that very seriously.
Based on all those reasons, I am not going to accept the recommendation, and, instead, I'm going to sentence you to serve twenty-five years with the Department of Corrections of possession of marijuana with intent to distribute. I direct that the defendant be placed under arrest. I hope there's someone here who can do that right away."
The Louisiana Supreme Court has stated that the "defendant's credibility is not necessarily a relevant factor for determining the proper sentence and certainly not sufficient to justify the maximum sentence." State v. Soco, 441 So.2d 719 (La.1983). The trial judge's desire that defendant learn to tell the truth in court "while ... a commendable one, it was not an acceptable basis for the relatively harsh penalty imposed on the defendant." See State v. LaFleur, 391 So.2d 445, 447 (La.1980).
Although the maximum sentence was not imposed and other aggravating factors were stated in the record by the trial judge, we find that an undue amount of emphasis was placed on the defendant's untruthfulness. The trial court judge was obviously inflamed by the defendant's untruthfulness and punished him for this conduct. In essence, the defendant was sentenced for not only the crimes for which he was before the court but also for the charge of perjury. We find it relevant that the state, considering all factors other than the defendant's untruthfulness, recommended a much shorter sentence. We acknowledge that the trial judge was in no means bound by the state's recommendation; however, the large discrepancy between the recommendation and the sentence tends to suggest that the trial judge heavily relied upon the defendant's untruthfulness in imposing a sentence. As such, and in accordance with the jurisprudential standards set forth by the Louisiana Supreme Court, we vacate the sentence imposed by the trial court and remand this case for resentencing without regard to the defendant's alleged perjury.

ASSIGNMENT OF ERROR NO. 3
In his final assignment of error, the Defendant alleges the trial court committed an error patent in imposing sentence upon Defendant, where the record is devoid of any reference indicating that the trial court accepted Defendant's plea of guilty, and his sentence is therefore invalid because it does not rest upon a valid and sufficient plea of guilty.
A valid guilty plea requires an affirmative showing in the record that at the time of the plea, the accused knowingly and voluntarily waived his constitutional privilege against self-incrimination, right to trial by jury and right to confront accusers. State v. Malmay, 548 So.2d 71 (La.App. 3 Cir.1989). There is no requirement upon the trial court to render a verbal or written response to a plea of guilty but only a requirement that the record shows that the defendant was informed of the consequences of his plea, his rights and that the plea was entered voluntarily. According to Louisiana jurisprudence, there is no requirement that a record must show that the trial court orally accepted a plea of guilty but only that the record show *678 the plea of guilty was entered knowingly and voluntarily. In State v. Woods, 402 So.2d 680 (La.1981), the supreme court found the trial court satisfied its duty to advise the defendant of his right to confront witnesses even though the trial court's advice of rights was not technically correct. The court explained:
While it is true that defendant was not specifically advised that he had the right to "confront" the witnesses against him, it would be the height of technicality to require that the word "confront" be used rather than an explanation of the right as was used here. It is clear from the transcript of the guilty plea colloquy, as well as the minutes, that defendant was advised of his confrontation rights, his right to trial by jury and his privilege against self-incrimination, and knowingly and voluntarily waived those rights.
Id., 402 So.2d at 682.
In the present case, whether the trial court satisfied its duty to accept Defendant's plea is at issue. As in the case above, it is clear from the transcript of the guilty plea colloquy, as well as the minutes, that Defendant intended to enter a guilty plea to the offense charged. The court first questioned the Defendant to determine whether he understood English, and the Defendant gave an affirmative response. A "Waiver of Constitutional Rights and Plea of Guilty" form was executed by the trial court. The court then questioned the Defendant about whether he understood the form to which the Defendant gave another affirmative response. The Defendant acknowledged waiver of his rights by affixing his signature on the document. Thereafter, the trial court conducted a Boykin examination[1] and questioned the Defendant about his waiver of rights, including the right to trial and his privilege against self-incrimination and the possible penalty for the offense of possession of marijuana with intent to distribute. The trial court questioned the Defendant as to whether the plea was uncoerced and voluntary. The plea was made knowingly, intelligently, freely and voluntarily and the plea was accepted as a matter of record. To vacate and set aside the Defendant's conviction would be repugnant upon the ideology of justice and would further be the height of technicality to require that the word "accept" be used to satisfy a guilty plea colloquy, where the record clearly establishes a Defendant chose to relinquish his rights to trial and enter a plea of guilty. Accordingly, the Defendant's final assignment of error is without merit.

CONCLUSION
For the foregoing reasons, Defendant's conviction is affirmed but the sentence is vacated and the case is remanded for resentencing. Upon resentencing, we instruct the trial court to amend the sentence to reflect that the Defendant is to be given credit for time he served prior to the execution of sentence.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.
AMY, J., concurs.
NOTES
[1] We note that the trial court did not specifically advise Defendant that he had a right to confront his accusers; however, this fact does not render the Boykinization insufficient.