# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 17-441


**STATE OF LOUISIANA**

**VERSUS**

**TERRY JAMES GOODEAUX
-AKA- TERRY GOODEAUX**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 22581-13
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**CONVICTIONS AND SENTENCES FOR SEXUAL BATTERY AFFIRMED; CONVICTION AND SENTENCE FOR ATTEMPTED SIMPLE BATTERY REVERSED AND VACATED.**

John Foster DeRosier
Fourteenth Judicial District Attorney
Carla Sue Sigler
Elizabeth Brooks Hollins
Fourteenth Judicial Assistant District Attorneys
901 Lakeshore Drive, Ste. 800
Lake Charles, LA 70601
(337) 437-3400
COUNSEL FOR:
    State of Louisiana

Chad M. Ikerd
Louisiana Appellate Project
P.O. Box 2125
Lafayette, LA 70502
(225) 806-2930
COUNSEL FOR DEFENDANT/APPELLANT:
    Terry James Goodeaux

Terry Goodeaux
Allen Correctional Center
3751 Lauderdale Woodyard Rd.
Kinder, La 70648

**EZELL, Judge.**

Terry James Goodeaux was indicted on November 13, 2013, with two counts of sexual battery, violations of La.R.S. 14:43.1, and one count of attempted sexual battery, a violation of La.R.S. 14:27 and 14:43.1. A jury trial commenced on September 15, 2015, following which Defendant was convicted of two counts of sexual battery and one count of attempted simple battery, violations of La.R.S. 14:27 and 14:35. On October 29, 2015, Defendant filed a "Motion for New Trial." A hearing was held on the motion on January 22, 2016, following which the trial court denied Defendant's motion for a new trial. Defendant was sentenced on January 22, 2016, to twenty-five years on each conviction for sexual battery, to be served concurrently, and to three months in the parish jail on the attempted simple battery conviction, to be served concurrently with the twenty-five year sentences, and was given credit for time served on all sentences. Defendant filed a "Motion to Reconsider Sentence." The motion was denied on February 1, 2016, without a hearing. On November 5, 2016, Defendant filed an "Application for Post-Conviction Relief," wherein he sought an out-of-time appeal. Defendant was granted an out-of-time appeal on December 9, 2016.

On appeal, Defendant asserts five assignments of error, as follows:

1. The State failed to sufficiently prove Terry Goodeaux was guilty of sexual battery although the lesser included offense of simple battery was proven beyond a reasonable doubt .

2. Terry Goodeaux's conviction for "attempted simple battery" is patently erroneous because no such crime exists under Louisiana Law. Thus, the trial court erred by instructing the jury that attempted simple battery was a lesser included offense of attempted sexual battery.

3. The Trial Court erred in allowing the State to amend the bill of information to include the phrase "or instrumentality" after the jury had been selected and sworn in, because such a change was not a procedural change, but was rather substantive.

4.  The trial court['s] effort to determine whether Terry Goodeaux's waiver of the conflict of interest between his legal team and their firm's previous representation of an adverse witness did not follow the necessary procedures to ensure that Terry Goodeaux's waiver was knowing and intelligent.

5.  The trial court erred by overruling a hearsay objection to Tiffany White's testimony regarding statements her daughters made to her, out of court, when they were being offered for the truth of their assertions.

We find there is merit to Defendant's assignment of error number two in that attempted simple battery is not a crime under Louisiana law. Accordingly, the conviction for attempted simple battery should be reversed and the sentence imposed on the conviction vacated. However, Defendant failed to show merit with the remaining assignments of error. Accordingly, this court should affirm the two convictions and sentences for sexual battery.

## FACTS

At trial, the following testimony was submitted to the jury:

Two of the victims were twin sisters, K.W. and C.W., whose birthdates are October 14, 2005. The third victim was M.V., whose birthdate is April 10, 2006.[1]

Deputy McKee, a patrol officer with the Calcasieu Parish Sheriff's Office, responded on August 7, 2013, to a complaint that two young girls had been inappropriately touched by a neighbor. He went to a trailer park located in South Lake Charles and spoke with Tiffany White, the mother of two of the victims. The deputy spoke with Defendant, who lived a few trailers away from the victims' trailer, and later with Willis Comeaux, who witnessed the alleged acts of inappropriate touching of two of the victims.

Cinnamon Salvador, a detective with the Calcasieu Parish Sheriff's Office in the sex crimes and child abuse unit, testified that she spoke with C.W. and K.W. on

---

[1]Pursuant to La.R.S. 46:1844(W), the victims' initials are used to protect their identities.

2

August 7, 2013. She stated Defendant agreed to be transported to headquarters, and he gave a videotaped statement. Mr. Comeaux was also transported to headquarters and gave a videotaped statement. Detective Salvador stated she scheduled interviews for the victims with the Child Advocacy Center. The interviews took place on August 15, 2013. While the detective was not physically present during the interviews, she observed the interviews via video telecast. She stated that the victims' statements to the interviewer were consistent with the statements they made to her on the day of the offense. The detective stated that she also learned from the victims' mother that there was another possible victim, M.V. After speaking with M.V.'s mother, the detective scheduled another interview with the Child Advocacy Center. M.V.'s grandparents lived at the trailer park, and it was outside the grandparents' trailer where the alleged offenses took place.

Mr. Comeaux testified he was home the day of the incident. He lived with his girlfriend in a trailer next to M.V.'s grandparents' trailer. He stated he was in the bathroom when he happened to look out the window and saw Defendant sitting in a chair, a little behind the grandparents' trailer, talking to the twins. Mr. Comeaux said the girls began crawling on their hands and knees in front of Defendant. As they crawled past Defendant, he reached down and touched them between their legs, over their clothing. He said Defendant touched one of the victims twice and the other once. Mr. Comeaux demonstrated on a doll supplied by the State where Defendant touched the girls. He described the touch as "rubbing." Mr. Comeaux stated he got so upset he started out to confront Defendant, but his girlfriend stopped him. After he cooled down a little, he drove to the victims' parents' trailer and told their stepdad, Ennis Peterman, about what

3

he had seen Defendant do to the girls. Mr. Comeaux stated that later the same day he gave a statement to the police.

Ms. White testified that she accompanied her daughters to the Child Advocacy Center and viewed their statements with Detective Salvador. She asserted that they had never made any allegations of inappropriate touching before. Both Ms. White and Mr. Peterman testified that the girls showed them where Defendant touched them. C.W. said Defendant touched her on her "butt," and K.W. said he touched her on her "butt" and "vagina."

Both of the victims testified. They were nine years old at the time of trial. K.W. used the doll to show the jury where Defendant touched her. She described the locations of the touching as the "front and in the back." She stated the back was her "butt." When asked if it was a good or bad touching, she responded "bad." C. W., using the doll, pointed to between the doll's legs and to the back of the doll, stating that Defendant touched her in the "front" and "butt." She, too, described the touching as "bad."

Finally, M. V. testified. She was nine years old at the time of trial. She remembered visiting with her grandparents when they lived in the trailer park. She stated she used to play with K.W. and C.W. However, while she stated she remembered Defendant, she could not point him out in the courtroom. She testified that Defendant tried to touch her in the front part of her "wrong spot," but she ran away.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record.

4

For each of Defendant's convictions of sexual battery, the court sentenced him two twenty-five years with the Louisiana Department of Corrections to run concurrently. At least twenty-five years of each of Defendant's sentences were required to be imposed without the benefit of parole, probation, or suspension of sentence. La.R.S. 14:43.1. Thus, the trial court's failure to impose each of the sentences without the benefit of parole renders them illegally lenient. However, this court will not consider an illegally lenient sentence unless it is raised as error. *State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that the evidence was insufficient to sustain the two convictions of sexual battery. Although, he argues the evidence was sufficient to prove beyond a reasonable doubt that he committed the offense of simple battery.

In *State v. F.B.A.*, 07-1526, pp. 1-2 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1009, *writ denied,* 08-1464 (La. 3/27/09), 5 So.3d 138 (alteration in original), this court discussed sufficiency of the evidence, as follows:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino,* 436 So.2d at 563, citing *State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

*State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

Furthermore, the testimony of a single witness is sufficient to support a conviction "[i]n the absence of internal contradiction or irreconcilable conflicts with physical evidence." *State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936. The trier of fact may accept or reject the testimony of any witness, and the determination of the credibility of that witness, in whole or in part, is left to its sound discretion and "will not be re-weighed on appeal." *Id.* at 936.

At the time of the offense, sexual battery was defined, in pertinent part, as "the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender[.]" La.R.S. 14:43.1(A). Defendant argues the victims' descriptions of where he touched them were too vague to prove that he touched their anus or genitals. He further points to inconsistent testimony as to who was touched where and how they were touched.

Defendant argues that the State used an anatomically incorrect doll as demonstratives and that the State did not "'clarify the record' by saying the girls were pointing to the anus or genital of the doll, for the record." In a footnote, Defendant argues: "The defense [sic] failure to object and ask for clarification can hardly be an error on the defense who could only benefit from the State's failed effort to establish facts necessary for the record to later be reviewed by this Court."

Defendant is correct in that the State did not specifically note for the record that the area the victims at trial indicated they were touched was the "anus" or the "vagina." The victims referred only to the "front," "back," and "butt" and stated that the touching was "bad." While this court cannot see where the victims pointed, the jury had the benefit of seeing where they indicated they were touched using the doll. Defendant objected at trial because the doll was not anatomically correct. However, it is not necessary for there to be a vagina on the doll for the

6

jury to recognize that between the doll's legs was, in this case, the victims' genitals and that the anus was located in the "butt" area.

Mr. Comeaux, who saw the interaction between Defendant and the girls, testified that Defendant touched them on the genitals and described the touch as "rubbing." He further demonstrated for the jury where the victims were touched using the doll.

Defendant also suggests that the inconsistencies in the twins', their parents', and Mr. Comeaux's testimonies regarding who was touched where, were indicative of the State's failure to establish all the elements of sexual battery. Defendant argues that he was guilty only of simple battery. Louisiana Revised Statutes 14:33, in pertinent part, defines battery as "the intentional use of force or violence upon the person of another[.]" Simple battery is defined as a "battery committed without the consent of the victim." La.R.S. 14:35. While touching of the genitals or the anus are elements of the offense of sexual battery, the jury heard all the inconsistencies of how many times one or the other was touched and where. The jury, who are the finders of fact, was able to evaluate the inconsistencies and obviously believed the witnesses regardless of the inconsistencies. We find no internal contradiction established by the inconsistencies Defendant complains of; accordingly, we see no reason to upset the jury's credibility determinations. As noted above, the testimony of a single witness is sufficient to support a conviction. In this case, there were two witnesses, the victims, as well as an eyewitness to the offenses. The State met its burden of proof beyond a reasonable doubt.

There is no merit to this assignment of error.

7

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that the trial court erred when it instructed the jury that attempted simple battery was a lesser included offense to sexual battery. Defendant argues that attempted simple battery is a non-crime, and because the jury returned an invalid conviction, the conviction should be dismissed. He argues:

> In *State v. Trackling,* the Louisiana Supreme Court proclaimed the crime of attempted simple battery is "not [a] separate, cognizable offense[]" under Louisiana Law because attempting to commit a simple battery is already recognized under Louisiana Law as an "assault," pursuant to La.R.S. § 14:38. 04-3222 (La. 01/19/06), 921 So.2d 79, 84. Therefore, even though simple battery may be a lesser included offense to sexual battery, attempted simple battery is not a lesser included offense to attempted sexual battery.

> Because an attempted battery already has a "companion offense," the Courts cannot use the general provisions of La.C.Cr.P. art. 815 to allow a jury to find a defendant guilty of attempted simple battery.

Also citing *State v. Trackling*, 04-3222 (La. 1/19/06), 921 So.2d 79, the State concedes there is no such crime as attempted simple battery and agrees the conviction was erroneous. Therefore, we reverse the conviction of attempted simple battery and vacate the sentence imposed.

## ASSIGNMENT OF ERROR NO 3

As noted above, the sexual battery statute, at the time of the offense, in pertinent part, read that sexual battery was "the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender[.]" La.R.S. 14:43.1(A). However, the State left out the phrase, "any instrumentality or" in the original indictment. After the commencement of trial, before any witnesses testified, the State moved to amend the bill to include the above phrase. Defendant objected, stating that the addition

8

was not just a technical change to the bill but a substantive change. The trial court

allowed the amendment and the additional wording was added to the bill.

At the time of the offense, La.Code Crim.P. art. 487, **Defective indictment;**

**amendment**, provided, in pertinent part:

> A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.

> Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.

In *State v. Simon*, 10-1111 (La.App. 3 Cir. 4/13/11), 62 So.3d 318, *writ*

*denied,* 11-1008 (La. 11/4/11), 75 So.3d 922, the defendant objected to an

amendment of the indictment when the State moved to add the victim's age to the

indictment. The defendant argued the change was substantive rather than form. In

*Simon*, 62 So.3d at 325 (alterations in original) this court cited *State v. Johnson,*

93-394, p. 3 (La. 6/3/94), 637 So.2d 1033, 1034-35, as follows:

> La. Const. 1974, Art. I, § 13 provides that "[i]n a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him." This requirement protects the accused's right to prepare a defense and exercise fully his rights of confrontation and cross-examination. *State v. Germain*, 433 So.2d 110 (La.1983). The bill of information must therefore inform the defendant of the nature and cause of the accusation against him in sufficient detail to allow him to prepare for trial, as well as to allow the court to determine the admissibility of the evidence. *State v. Marcal*, 388 So.2d 656 (La.1980); *State v. Meunier*, 354 So.2d 535 (La.1978). Accordingly, the state may not substantively amend a bill of information to charge a new offense once trial has begun. La.C.Cr.P. art. 487; *Cf., State v. Roberts*, 319 So.2d 317, 320 (La.1975), rev'd on other grounds,

428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), on remand, 340 So.2d 263; *State v. Bluain*, 315 So.2d 749 (La.1975)[.]

In brief, Defendant argues that the State alleged and agreed that he never used any part of his body to touch the victims. Defendant argued **[T]he only way the state could have satisfied its burden of proof in this case** was through its effort to prove [he] used an 'instrumentality' to commit sexual battery." Therefore, the "instrumentality" was the girls' clothing. Thus, Defendant argues the amendment to allow the additional language prejudiced him, "making it a per se 'substantive' amendment, not a procedural amendment."

To support his argument that the amendment was substantive, Defendant states that in 2015, the legislature amended La.R.S. 14:43.1, to add the phrase "directly or through clothing." 2015 La. Acts No. 256 § 1. He goes on to argue that "[p]rior to that change, touching through the clothing was not express[ed] in the statute as a means to accomplish the crime." Defendant therefore argues the trial court erred when it did not order a mistrial. However, in *State v. Bouton*, 615 So.2d 23, 25-26 (La.App. 3 Cir. 1993), wherein the defendant, who was charged with sexual battery, argued that since the victims were clothed there was no skin to skin contact, the third circuit stated:

> We hold that skin on skin contact is not necessary for a sexual battery. A sexual battery can be committed by touching through clothing. LSA-R.S. 14:34.1 makes no distinction between a clothed or unclothed victim. See *State v. Schenck,*[513 So.2d 1159 (La.1987)] at 1164, n. 8. Moreover, it specifically includes the touching of the genitals of the victim by the offender *using any instrumentality*. We find that clothing constitutes an instrumentality with which to touch the victim's genitals. Therefore, the fact that defendant touched the victims through their clothes is not a defense to the crime of sexual battery.[2]

---

[2]Reference to La.R.S. 34.1, in this quote was a misprint wherein the numbers four and three were switched. In 1993, the statute noted pertained to second degree battery.

Furthermore, in *State v. Delandro*, 01-2514, p. 7 (La.App. 1 Cir. 5/10/02), 818 So.2d 1011, 1017, the first circuit described "substance" for the purpose of amending an indictment after trial had commenced, as follows:

> "A 'defect of substance' as contemplated by Article 487 of the Code of Criminal Procedure is intended to mean a defect which will work to the prejudice of the party accused." *City of Baton Rouge v. Norman*, 290 So.2d 865, 870 (La.1974); *see also State v. Harris*, 478 So.2d 229, 231 (La.App. 3 Cir.1985), *writ denied*, 481 So.2d 1331 (La.1986). The purpose of requiring the state to file an amendment to the indictment before trial is to provide the defendant with adequate notice of the charge so that he may properly prepare his defense. *State v. Young,* 615 So.2d 948, 951 (La.App. 1 Cir.), *writ denied*, 620 So.2d 873 (La.1993). When the indictment against him provides sufficient notice of the crime with which he is charged, a defendant suffers no prejudice.

In the current case, the citation to the sexual battery statute was provided in the indictment. The absence of the words "any instrumentality or" was an omission and thus was a defect of form. Defendant had sufficient notice of the crimes with which he was being charged. Moreover, Defendant has not shown that he was not prepared to defend himself; therefore, he has not established prejudice in this case.

## ASSIGNMENT OF ERROR NUMBER 4

During trial, following Willis Comeaux's direct testimony, Attorney Marsha Montgomery, a public defender, stated she had just learned that the State's two witnesses, Mr. Comeaux and Mr. Peterson, had been clients of the Public Defender's Office. She raised the concern that there was now a conflict of interest which would pit her loyalty to Defendant against the two prior clients. While an oral waiver of a potential conflict of interest was obtained from Defendant, he now argues that "[t]he trial court failed to take the necessary steps to ensure that Terry Goodeaux's Sixth Amendment right to conflict-free counsel was protected, committing reversible error in this case." Defendant asserts that the trial court

11

failed to follow the correct procedure to ensure that his waiver of the conflict of interest was knowingly and intelligently made. Defendant's defense counsel's prior representation of the witnesses was imputed to her via her employment with the Public Defender's Office.[3]

As a general rule, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant whom he is representing. *State v. Cisco*, 2001-2732 p. 17 (La.12/3/03), 861 So.2d 118, 129, *cert. denied,* 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004). An actual conflict of interest has been defined, as follows:

> If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to the other client.

The issue of conflicting loyalties may arise in several different contexts, but may include the circumstance "where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney." *Cisco*, 2001-2732 p. 17, 861 So.2d at 129, *citing State v. Tart*, 1993-0772 p. 19 (La.2/9/96), 672 So.2d 116, 125, *cert. denied,* 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996).

If the issue of counsel's alleged conflict of interest is raised in a pretrial setting, the district court has two options: "appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. . . . Failure to do one or the other in a case in which an actual conflict exists requires reversal." *Cisco*, 2001-2732 p. 17, 861 So.2d at 130. If the issue of counsel's alleged conflict of interest is not raised until after trial, "the defendant must prove that an actual conflict of interest adversely affected his lawyer's performance." *State v. Kahey*, 436 So.2d 475, 484 (La.1983). Because the prejudice to the defendant may be subtle, even unconscious, "where the conflict is real, a denial of effective representation exists without a showing of specific prejudice." *Id.*, 436 So.2d at 485.

---

[3]Defendant spent several pages of his brief arguing that all of the attorneys that work for the Public Defender's Office are imputed with the same conflict of interest concerns if he or she is required to cross-examine a witness who was or is a client of the Public Defender's Office and testifying against the defendant they are currently representing at the time. *See State v. Garcia*, 09-1578 (La. 11/16/12), 108 So.3d 1, *cert. denied,* __U.S.__, 133 S.Ct. 2863 (2013). However, this assertion was never contested by the State at trial or in brief.

The first step in the analysis of an alleged conflict of interest raised either pretrial or post-trial is whether an actual conflict of interest existed. We find it to be unnecessary to determine the timing of the challenge in this case because we find that Reeves fails to prove that his counsel labored under a conflict of interest while representing him for first degree murder. There was no actual conflict in Ware's representation of Reeves in the guilt phase of the first degree murder trial because Ware was not called upon to cross-examine any of his former or current clients in the state's prosecution. Furthermore, there was no actual conflict of interest in the penalty phase because the state did not present evidence of Reeves' prior conviction for attempted simple escape. Even if the state had presented evidence of this prior conviction, and a former or current client of Ware had been called to testify by the state, the district judge would have had available to him the alternative remedy of having second chair counsel, who was not similarly conflicted, conduct the cross-examination of those witnesses. *See Cisco*, 2001-2723, p. 25, 861 So.2d at 134.

*State v. Reeves,* 06-2419, pp. 78-79 (La. 5/5/09), 11 So.3d 1031, 1081-82, *cert. denied*, 558 U.S. 1031, 130 S.Ct. 637 (2009) (footnotes omitted) (alternation in original). "Actual conflicts of interest that adversely affect counsel's performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual conflict." *State v. Castaneda*, 94-1118, p. 12 (La.App. 1 Cir. 6/23/95), 658 So.2d 297, 305.

Defendant complains:

Even assuming the conflicted attorney's representing Terry could provide him with the legal advice necessary to ensure he understood the conflict, the court failed to secure a "narrative statement from Terry" proving to the Court Terry understood the waiver issue. Instead of asking Terry to write or make a statement on the record in narrative form, showing he fully understood his right, the trial court sought to ask him multiple "yes or no" questions. See, e.g., Leading questions and "yes, sir" answers do not constitute a narrative statement. In fact, after a break, but before any other evidence was offered in the case. Terry began "questioning the waiver that he just made." Ultimately, Terry again consented to waive the conflict, but his change of mind shows he was not certain of how the process worked, and his waiver was not likely knowing and intelligent.

In *State v. Cisco*, 01-2732, pp. 21-23 (La. 12/3/03), 861 So.2d 118, 132-33, *cert. denied*, 541 U.S. 1005, 124 S.Ct. 2023 (2004) (footnote omitted) (second,

13

third, and fourth alteration in original), the supreme court outlined the procedure to

be followed when it was determined a conflict existed:

> After the court has been alerted that an actual conflict of interest exists, the judge must take the proper steps to assure that the defendant's Sixth Amendment right to effective assistance of counsel is not violated. *State v. Carmouche*, 508 So.2d 792. As noted above, when a defendant raises the issue of a conflict of interest prior to trial, the judge is required either to appoint other counsel or to take adequate steps to determine whether the risk of a conflict of interest is too remote to warrant other counsel. *State v. Edwards,* 430 So.2d 60, 62 (La.1983) (quoting *Holloway v. Arkansas* [435 U.S. 475, 98 S.Ct. 1173 (1978]). Those steps were set forth in *Carmouche,* wherein we determined that the judge, while being mindful of the restrictions inherent in the attorney/client privilege, should first require the attorney to disclose the basis of the conflict. 508 So.2d at 805. Then, "[i]f the judge determines that the conflict is not too remote, he should explain the conflict to the defendant . . . and inform the defendant of his right to representation that is free of conflict." *Id.* Thereafter, if the defendant chooses to proceed with conflicted counsel, "a statement should be prepared in narrative form, which indicates that the defendant is fully aware of his right [to conflict free counsel] but has chosen to make a knowing and intelligent waiver thereof. *Id.* (citing *United States v. Winkle*, 722 F.2d 605 (10th Cir.1983), and *United States v. Martinez*, 630 F.2d 361 (5th Cir.1980)); *see State v. Odle,* 02-0226, pp. 19-20 (La.App. 3d Cir.11/13/02), 834 So.2d 483, 497; *State v. Sartain*, 98-0378, pp. 11-12 (La.App. 4th Cir.12/1/99), 746 So.2d 837, 846; see *also United States v. Schwarz,* 283 F.3d 76, 95 (2d Cir.2002); *United States v. Kliti,* 156 F.3d 150, 153 (2d Cir.1998).

> . . . .

> This court has previously set forth the requirements for a knowing and intelligent waiver of the right to counsel unburdened by a conflict of interest. Before a defendant can knowingly and intelligently execute a valid waiver of conflicted counsel he must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel. *Sartain,* 98-0378 at 12, 746 So.2d at 846 (citing *State v. Castaneda,* 94-1118, p. 5 (La.App. 1st Cir.6/23/95), 658 So.2d 297, 301)); *see also United States v. Garcia*, 517 F.2d 272, 276 (5th Cir.1975); *State v. Salinas,* 97-0716, p. 5 (La.App. 3d Cir.10/29/97), 703 So.2d 671, 674; *Duncan v. Alabama*, 881 F.2d 1013, 1017 (11th Cir.1989).

After defense counsel suggested there may be a conflict of interest involving two of the State's witnesses, the trial court excused the jury, and the following conversations ensued:

**THE COURT:**

> . . . .

> But the bottom line is there's a conflict with the witnesses, with two of the witnesses, Mr. Comeaux being one, Willis Comeaux being one, and Ennis Peterman, who has not yet been called but as the other conflict. The public defender's office has represented both of those witnesses in the past, and they are currently representing the defendant in this case, Mr. Goodeaux.

> And based on case law, the conflict is not the witnesses' to waive, but it's the defendant's to waive, even though it's the defendant's - - even though it would be the witnesses' information that would be disclosed through cross-examination, apparently it's still the defendant's conflict that - - it's the defendant's - - the defendant that has the - - that has to waive in order to go forward.

> So with that being said, we took an extended recess for approximately 45 minutes now to give counsel - - defense counsel, Ms. Montgomery and Mr. Andrew Casanave, her supervisor, time to visit with the defendant, Mr. Comeaux, and - - about whether he wants to waive his - - waive any potential conflict in order to go forward with his case, to continue with the trial.

> . . . .

**MR. CASANAVE:**

> I will, Your Honor, just to clarify. And as to Mr. Comeaux, the conflict comes from a case that's quite a number of years ago. And, in fact, you know, - - it would - - I can safely say, despite - - despite my belief that a conflict continues to exist that we actually wouldn't necessarily even know how to find Mr. Comeaux's office files at this point because it is so far back.

> . . . .

**MR. CASANAVE:**

> So there a good chance that we might never be able to find Mr. Comeaux's file. As to Mr. Peterman, his most recent conviction is such that he may have been arrested while this case was pending. The lawyer on that case would have had no reason to know to look up this

case, because, you know, you're not thinking of this guy as a witness someplace out in the space.

**THE COURT:**

Right.

**MR. CASANAVE:**

And that was a theft case, an unauthorized use of an access card case that was opened and closed while Mr. Goodeaux was incarcerated pending trial. So that's something that was easy to miss in that sense, - -

. . . .

**THE COURT:**

Okay. Would you slide that microphone in front of Mr. Goodeaux.

Mr. Goodeaux, you spend a good while - - you've probably spent about 30 minutes talking to your lawyers, correct?

**THE DEFENDANT:**

Yes, sir.

**THE COURT:**

Mr. Casanave and Ms. Montgomery, y'all were back there for about 30 minutes in the jury deliberation room just by yourselves, correct?

**THE DEFENDANT:**

Yes, sir.

**THE COURT:**

And y'all were discussing this issue, the conflict of interest issue, - -

**THE DEFENDANT:**

Yes, sir.

**THE COURT:**

Is that correct?

16

**THE DEFENDANT:**

Yes, sir.

**THE COURT:**

Did you understand what they were saying?

**THE DEFENDANT:**

Yes, sir.

**THE COURT:**

And you understand that in order for this trial to go forward, you have to waive - - in other words, they may have information in their file because they were - - they used to represent Mr. Goodeaux and Mr. Peterman. They may have information in their file that could help them cross-examine those witnesses that could potentially help you.

**THE DEFENDANT:**

Yes. And it could hurt me.

**THE COURT:**

Or it could hurt you.

**THE DEFENDANT:**

Yes, sir.

**THE COURT:**

You just don't know at this point. But do you - - so the question is - - under the case law, you have to be the one to waive any potential conflict of interest there in order for us to go forward with this trial.

And so my question to you is: Do you want to do that?

**THE DEFENDANT:**

The jury wouldn't know nothing about it, would they?

**THE COURT:**

The jury wouldn't know anything about it. The only thing the jury would know is that, you know, something came up, and we had to take an extra-long recess, which happens all the time.

**THE DEFENDANT:**

You know, sir, she's doing a great job. I'm very, you know, - - I'm impressed with her performance. So, like I said, I would rather go forth with it, you know.

**THE COURT:**

Okay.

**THE DEFENDANT:**

Let her cross-examine. She's been doing good so far.

. . . .

**THE COURT:**

All right. So you - - so that I'm clear, you want to waive any potential conflict of interest because you feel like you're satisfied with the representation of Ms. Montgomery and that you understand that, you know, that the - - now, they don't currently represent Mr. Goodeaux [sic] or Mr. Peterman.

. . . .

**THE COURT:**

All right. Your lawyer spent 30 minutes talking to you about it. I've spent just a few minutes visiting with you about it, and you want to waive any potential conflict in order to go forward in this case; is that right?

**THE DEFENDANT:**

Yes, sir. Yes, sir.

**THE COURT:**

All right. Let the record so reflect. I do find that Mr. Goodeaux is knowingly and intelligently waiving any potential conflict of interest here with regard to, you know, the public defender's office's prior representation of two of the witnesses for the State, and in order

18

for them to continue representing him. And that's what you want to happen, right?

**THE DEFENDANT:**

Yes, sir.

However, before trial resumed, Ms. Montgomery advised the trial court that Defendant decided that he wanted to represent himself and was having second thoughts about the waiver. The trial court again dismissed the jury and spoke with Defendant. Defendant told the trial court that he remembered a witness he wanted subpoenaed, who was also an eyewitness to the alleged offenses, and this eyewitness would testify that the alleged offenses never happened. After a lengthy discussion of who the witness was and his whereabouts, it was agreed that if defense counsel could locate the witness, he could testify. Defendant then stated that he had no problem going forward with the trial and agreed that he had waived any potential conflict of interest.

In brief, Defendant argues that the trial court found an actual conflict existed that was not too remote: "[I]t is clear that the trial court felt the 'conflict is not too remote' because the court took several actions it felt was necessary to address and remedy the problem." Despite Defendant's assertion, the trial court never made the statements that there existed an actual conflict or that the public defenders' representations of the witnesses were not too remote.

The State argues that there was no actual conflict. We agree with the State. Regarding Mr. Comeaux, who was an eyewitness to the offense and whose testimony was damaging to Defendant, defense counsels agreed that Mr. Comeaux's representation was so long ago that they doubted his file even still existed. The record does not reflect that Mr. Casanave or Ms. Montgomery represented either of the witnesses. In the case of Mr. Comeaux, there was no

19

showing how Ms. Montgomery's loyalty to Defendant or to Mr. Comeaux was compromised. In a recent circuit case, *State v. Thomas*, 16-578 (La.App. 3 Cir. 4/19/17), 217 So.3d 651, this court addressed a similar situation wherein it was determined there was no conflict of interest. In that case, the witness's testimony was not necessarily prejudicial to the defendant and the prior representation by the public defender had been minimal. However, this court set out the parameter for finding whether there was an actual conflict of interest between the client and the witness, as follows:

> In the present case, the trial court was made aware of a potential conflict during trial. The trial court found, however, that there was no actual conflict because there was no indication that either one of Defendant's attorneys actually represented Ms. Kibodeaux. As Defendant argues in brief, however, the testimony is unclear as to whether Mr. Monroe actually represented Ms. Kibodeaux. Additionally, it appears that if another member of the Public Defender's Office represented Ms. Kibodeaux, that representation would be imputed to Defendant's attorneys as employees of the Public Defender's Office. Nonetheless, we conclude that the evidence presented was insufficient to prove that either of Defendant's attorneys was operating under an actual conflict of interest. The fifth circuit addressed a factually similar case and found no actual conflict existed. *See State v. Kelly,* 14-241 (La.App. 5 Cir. 10/29/14), 164 So.3d 866, *writ denied,* 14-2499 (La. 9/25/15), 178 So.3d 163. The defense attorney in *Kelly* had previously represented one of the State's witnesses. Kelly argued that "an actual conflict arose when [his attorney] was required to cross-examine [the witness at trial,] that the conflict was not cured by a valid waiver and that the error . . . was not harmless." *Id*. at 877. The State contended, however, that no actual conflict existed because Kelly's attorney had "only represented [the witness] in her role as an indigent defender at a preliminary hearing in an unrelated matter." *Id*. Agreeing that no actual conflict existed, the fifth circuit explained:

> > The phrase "actual conflict of interest" means "precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties." *Mickens* [*v. Taylor*], 535 U.S. [162,] 171, 122 S.Ct. [1237,] 1243, 152 L.Ed.2d 291 [(2002)]. An actual conflict of interest arises when a defense counsel is "put in the unenviable position of trying zealously to represent Defendant at trial while simultaneously trying to protect the confidences of a former client who was testifying for

20

the state against Defendant." *State v. Bell*, 04-1183 (La.App. 3 Cir. 3/2/05), 896 So.2d 1236, 1243, *writ denie*d, 05-0828 (La. 11/28/05), 916 So.2d 143, *citing Carmouche,* 508 So.2d [792] at 804 [(La. 1987)]. The facts presented in this case do not show that defense counsel was forced to labor under an actual conflict with clearly divided loyalties.

*Id*. at 879 (footnote omitted).

. . . .

Recently, in *State v. Tucher*, 13-1631, p. 37 (La. 9/1/15), 181 So.3d 590, 619, *cert. denied*, ___U.S. ___, 136 S.Ct. 1801, 195 L.Ed.2d 774 (2016), the supreme court explained that even if a defendant proves an actual conflict, he still must show that a "lapse in representation" resulted from the conflict:

"[O]nce Defendant established that there was an actual conflict, he need not prove prejudice, but simply that a 'lapse in representation' resulted from the conflict. [*United States v*.] *Iorizzo*, 786 F.2d [52,] 58 [ (2d Cir. 1986) ] (quoting *Cuyler* [*v. Sullivan*], 446 U.S. [335,] 349, 100 S.Ct. [1708,] 1718, 64 L.Ed.2d 333 [ (1980) ]). To prove a lapse in representation, a defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests,' " *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994) (quoting *Winkler* [*v. Keane*], 7 F.3d [304] at 309 [ (1993) ]).

*Id*. at 672-73 (alterations in original except for ellipsis).

In the current case, Ms. Montgomery cross-examined Mr. Comeaux extensively and aggressively regarding what he alleged he saw Defendant do to the victims. She further questioned him regarding his criminal history. In brief, Defendant does not indicate by specific instances in what way defense counsel's performance was impeded or conflicted by a sense of loyalty to either her client or to Mr. Comeaux. Nor does Defendant argue an alternative defense strategy that might have been pursued but was not because of a conflict of interest.

As for Mr. Peterson, his case with the Public Defender's Office was concluded by the time of Defendant's trial. His testimony comprised of what he learned from Mr. Comeaux and what the girls told him and Ms. White. During direct-examination, Mr. Peterson admitted he had a criminal history. On cross-examination, Ms. Montgomery never questioned him about his criminal history and only questioned him briefly about how the victims described the alleged touching. As with Mr. Comeaux, Defendant does not indicate by specific instances in what way defense counsel's performance was impeded or conflicted by a sense of loyalty to her client or to Mr. Peterson.

Furthermore, the trial court also assigned a friend of the court to speak with both of the witnesses and they both waived any client/attorney confidentiality associated with the representation they received from the Public Defender's Office. As the State points out in brief, once Mr. Comeaux and Mr. Peterson waived attorney/client confidentially, any loyalty owed to the witnesses was voided; Defendant was free to impeach the witnesses or divulge any confidential information. There was no indication in the record that Ms. Montgomery owed a duty of loyalty to either Mr. Comeaux or Mr. Peterson that conflicted with her representation of Defendant.

Based on the above facts, circumstances, and jurisprudence, Defendant failed to show an actual conflict of interest existed. The trial court in this case took the cautionary action to seek an intelligent and voluntary waiver from Defendant, and Defendant failed to establish his oral waiver was not voluntarily or intelligently given.

There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER 5

Defendant argues that the trial court erred when it allowed Ms. White to testify as to what her daughters told her about where Defendant touched them. He argues this testimony was inadmissible hearsay evidence. Louisiana Code of Evidence Article 801(C) provides that "'[h]earsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."

The State argues that an original complaint by a young child to his mother about sexual abuse is admissible evidence. Citing *State v. Free*, 26,267, p. 11 (La.App. 2 Cir. 9/21/94), 643 So.2d 767, 776, *writ denied*, 94-2846 (La. 3/10/95), 650 So.2d 1175, the State noted that "[b]ecause the child may not have a clear understanding of what has been done to her, her 'original complaint' often consists of responses to the questioning of a patient, persistent adult who draws the child's story from her."

Moreover, La.Code Evid. art. 801(D) provides, in pertinent part, that a statement is not hearsay if:

> **(1)** **Prior statement by witness**. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
> . . . .
>
> (d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.

At trial, Ms. White testified that after she and her husband had been told by Mr. Comeaux what he had seen Defendant do to the girls, they immediately called the girls in and asked them what happened. Ms. White testified that C.W told her Defendant touched her on her "butt," and K.W. said he touched her on the "butt" and the "vagina." Defendant objected to the testimony as hearsay.

In brief, Defendant argues that Ms. White's testimony was the only evidence the jury received regarding where Defendant actually touched the victims. He asserts that without this evidence, the jury would not have been able to find the element of touching of the anus or genitals as required to achieve a valid verdict. Accordingly, Defendant contends that the error was not harmless. When performing a harmless error analysis, the reviewing court must determine "'"whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction,"'" and "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828 (1967) (quoting *Fahy v. State of Connecticut,* 375 U.S. 85, 86, 84 S.Ct. 229, 230 (1963). The inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 2081 (1993).

The State argues that even if the statements were inadmissible, in this case, the admission of the statements was harmless error. There was other testimony that established the sexual abuse by Defendant. As discussed above, the victims and an eyewitness to the sexual activity testified. The victims indicated, as did the eyewitness, where Defendant touched them using a doll to show the location of the touching. Even without Ms. White's testimony the evidence was sufficient, and thus, the verdict was not attributable to the error.

There is no merit to this assignment of error.

**CONCLUSION**

Defendant's convictions and sentences for the two convictions of sexual battery are affirmed. However, we reverse the conviction of attempted simple battery, which is a not a crime under Louisiana law, and vacate the sentence imposed on the conviction.

**CONVICTIONS AND SENTENCES FOR SEXUAL BATTERY AFFIRMED; CONVICTION AND SENTENCE FOR ATTEMPTED SIMPLE BATTERY REVERSED AND VACATED.**